STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark SEVELIN, Defendant-Appellant.

Court of Appeals

*No. 96–0729–CR. Submitted on briefs July 17, 1996.—Decided August 6, 1996.*

(Also reported in 554 N.W.2d 521.)

On behalf of defendant-appellant, the cause was submitted on the brief of *Marlene Baierl* of *Bartholomew & Miller, S.C.*, of Hudson.

On behalf of plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Stephen Kleinmaier*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Mark Sevelin appeals a conviction for misdemeanor criminal damage to property, contrary to § 943.01(1), STATS., 1993-94, and a postconviction order denying his motion for sentence credit for eighty-two days he spent at substance abuse treatment centers.[1] Sevelin argues that (1) he cannot be convicted of criminal damage to property of his own marital home because the home is not "property of another," and (2) the trial court should have credited the time he spent at the treatment center against his jail sentence because he was in "custody" at the treatment center. *See* § 973.155(1)(a), STATS.[2] We conclude that (1) Sevelin can be convicted of criminally damaging his own marital home because his wife also had an ownership interest in the home and (2) Sevelin was in constructive custody of the Polk County sheriff while in the treatment center. Therefore, the judgment of conviction is affirmed, but the postconviction order is reversed.

---

[1] Section 943.01(1), STATS., provides: "Whoever intentionally causes damage to any physical property of another without the person's consent is guilty of a Class A misdemeanor."

[2] Section 973.155, STATS., provides in part: "A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed."

In February 1994, Sevelin arrived home intoxicated, threatened his family with a two-foot knife and damaged several rooms in his marital home. When police arrived, Sevelin became verbally abusive and struck an officer.

The police arrested Sevelin, and he was held in jail under a $5,000 cash bond. Sevelin was charged with: (1) battery to a law enforcement officer, a felony, contrary to § 940.20(2), STATS., (2) obstructing an officer, a misdemeanor, contrary to § 946.41(1), STATS., (3) disorderly conduct, a misdemeanor, contrary to § 947.01, STATS., and (4) criminal damage to property, a misdemeanor, contrary to § 943.01, STATS.

Sevelin remained in jail until a later bond hearing. At that hearing, the circuit court modified Sevelin's bond and granted him a "furlough" to attend an inpatient treatment facility. The terms of the modified bond required that Sevelin sign an authorization so that the court could obtain information from the facility about his progress and whether he had left the clinic. The court warned Sevelin that if he left the institution for any reason, he would have to return to jail immediately. Sevelin initially stayed at an inpatient treatment facility resembling a hospital, and was transferred to a halfway house for substance abusers. Sevelin does not claim he was physically restrained at either facility in any manner. He remained in the facilities for a total of eighty-two days. After completion of the inpatient treatment programs, Sevelin's cash bond was amended to a signature bond, and the circuit court ordered him to comply with an after-care program.

Sevelin was convicted of all four counts charged. The trial court sentenced Sevelin to four years in the intensive sanctions program, with the first year to be spent in prison for the felony charge of battery to a law

enforcement officer. The trial court also sentenced Sevelin to a total of 150 days in jail for the three misdemeanor charges. During the sentencing hearing, the trial court credited Sevelin for the days he spent in jail prior to sentencing. However, the court did not grant Sevelin's postconviction motion for credit for the days he spent at the inpatient rehabilitation centers.

First, Sevelin argues that the trial court erred by denying his motion to dismiss his criminal damage to property charge. One of the elements the State must prove to sustain a conviction is that the property damaged was the "property of another." Section 943.01(1), STATS.; WIS J I—CRIMINAL 1400. Sevelin was convicted of damaging his marital home. Although the precise ownership status of the home is unclear from the record, Sevelin and the State agree that both Sevelin and his wife have an ownership interest in the home. Sevelin argues that he cannot be convicted of damaging property in which he has an ownership interest.

Statutory interpretation is a question of law we review de novo. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177, 179 (Ct. App. 1992). Sevelin does not acknowledge or discuss § 939.22(28), STATS. That section defines "property of another" for purposes of chs. 939 to 948 and 951, STATS., as "property in which a person other than the actor has a legal interest which the actor has no right to defeat or impair, even though the actor may also have a legal interest in the property." This section unambiguously means that a person can be convicted of criminal damage to property even though he or she has an ownership interest if someone else also has an ownership interest.

131

Next, Sevelin argues that the trial court should have given him credit toward his jail sentence for the time he spent at inpatient treatment facilities. Section 973.155(1)(a), STATS., entitles defendants to credit toward service of their sentence "for all days spent in custody in connection with the course of conduct for which sentence was imposed." The State argues that Sevelin was not "in custody" during his stay at the rehabilitation centers. Whether the facts establish that Sevelin was in custody is a matter of statutory construction that we review de novo. *See State v. Pettis*, 149 Wis. 2d 207, 209, 441 N.W.2d 247, 248 (Ct. App. 1989).

In *State v. Gilbert*, 115 Wis. 2d 371, 378-79, 340 N.W.2d 511, 515 (1983), our supreme court determined that we should use the escape statute, § 946.42(1)(a), STATS., to determine whether a person is in custody for sentence credit purposes.[3] Section 946.42(1)(a)[4] provides in part:

> *"Custody" includes* without limitation actual custody of an institution, including a secured juvenile correctional facility, a secure detention facility, as defined under s. 48.02(16), or a juvenile portion of a county jail, or of a peace officer or institution guard and *constructive custody of prisoners* and juveniles

---

[3] At the time our supreme court wrote *State v. Gilbert*, 115 Wis. 2d 371, 340 N.W.2d 511 (1983), § 946.42(1)(a), STATS., was numbered § 946.42(5)(b) . Certain changes, not relevant to this discussion, were made to the statute after *Gilbert*. *See State v. Swadley*, 190 Wis. 2d 139, 143 n.3, 526 N.W.2d 778, 780 n.3 (Ct. App. 1994).

[4] Our legislature revised § 946.42(1)(a), STATS., after the events that led to this appeal. These revisions are not relevant to our decision.

subject to an order under s. 48.34(4m) *temporarily outside the institution whether for the purpose of* work, school, *medical care*, a leave granted under s. 303.068, a temporary leave or furlough granted to a juvenile *or otherwise*. (Emphasis added.)

Sevelin argues that he was in constructive custody of the Polk County jail during his time at the treatment center because he was "temporarily outside the [county jail] for the purpose of . . . medical care . . . ." Section 946.42(1)(a), STATS. We agree.

There is no dispute that Sevelin was only outside the jail temporarily. The circuit court told Sevelin, "[i]f you leave [the treatment center] for any reason even if it is upon successful completion of the program, you report back to jail . . . ."

The State argues that Sevelin's treatment at the rehabilitation centers does not constitute "medical care."[5] We must construe § 946.42(1)(a), STATS., to

---

[5] The State argues that § 302.38(1), STATS., defines "medical care" for the purposes of § 946.42(1)(a), STATS. Section 302.38(1) provides:

> If a prisoner needs medical or hospital care or is intoxicated or incapacitated by alcohol the sheriff or other keeper of the jail shall provide appropriate care or treatment and may transfer the prisoner to a hospital or to an approved treatment facility under s. 51.45 (2) (b) and (c), making provision for the security of the prisoner.

The State contends that Sevelin did not receive medical care as contemplated by § 302.38(1) because no "provision for the security of the prisoner" was made because Sevelin had the physical freedom to walk away from the treatment center.

Section 302.38(1), STATS., does not define "medical care." That subsection merely instructs the sheriff or jail keeper on the appropriate method to proceed in the event that a prisoner needs medical care. Whether the sheriff or jail keeper complied

determine the meaning of the phrase "medical care." When construing a statute, our first inquiry is whether the words of the statute have an unambiguous meaning. *Bindrim v. B. & J. Ins. Agency*, 190 Wis. 2d 525, 645, 527 N.W.2d 320, 434 (1995). If so, we do not resort to rules of judicial construction; rather, we give the words their obvious and intended meaning. *Id.*

■

The unambiguous meaning of "medical care" includes treatment of all diseases. Alcoholism is a disease. *DeLaMatter v. DeLaMatter*, 151 Wis. 2d 576, 586, 445 N.W.2d 676, 681 (Ct. App. 1989). We conclude that "medical care," as used in § 946.42(1)(a), STATS., unambiguously includes treatment at drug and alcohol rehabilitation centers. Because Sevelin was temporarily outside the Polk County jail for the purpose of medical care, the sheriff had constructive custody of him.[6]

---

with that section is irrelevant to the determination of whether a prisoner has received medical care.

[6] The trial court expressed concern that granting sentence credit to inmates awaiting trial for time spent in rehabilitation facilities would deter judges from allowing the inmates to seek treatment at these facilities. Because our legislature has unambiguously provided that inmates should receive sentence credit for all medical care, we cannot address this policy concern. *See Kellner v. Christian*, 197 Wis. 2d 183, 190, 539 N.W.2d 685, 688 (1995) (If meaning of statute is clear, we go no further in reviewing its meaning.). Nonetheless, we note that an inmate would not receive sentence credit if the circuit court released the inmate from bond before allowing the inmate to leave jail for the treatment facility. *See* § 969.02, STATS. ("A judge may release a defendant charged with a misdemeanor without bail . . . ."); *see also* § 969.03, STATS. ("A defendant charged with a felony may be released by the judge without bail . . . ."). Finally, if an inmate is a significant flight risk or a potential danger to the community,

The State cites *State v. Swadley*, 190 Wis. 2d 139, 526 N.W.2d 778 (Ct. App. 1994); *Pettis; State v. Cobb*, 135 Wis. 2d 181, 400 N.W.2d 9 (Ct. App. 1986), to establish that Sevelin was not in actual custody. We need not address this argument because our holding with regard to constructive custody is dispositive. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983). We note, though, that these cases are distinguishable with regard to our discussion concerning whether Sevelin was in *constructive* custody. In *Pettis* and *Swadley*, the defendants spent time in home detention, *Pettis*, 149 Wis. 2d at 208, 441 N.W.2d at 248; *Swadley*, 190 Wis. 2d at 140, 526 N.W.2d at 779, and "[h]ome detention is not the constructive custody of prisoners temporarily outside the institution for the purpose of work, school, medical care or furlough." *Swadley*, 190 Wis. 2d at 143, 526 N.W.2d at 780. In *Cobb*, the defendant was not in constructive custody because he was not "temporarily let outside an institution." *Id*. at 185 n.3, 400 N.W.2d at 11 n.3.

In sum, we affirm Sevelin's conviction for criminal damage to property of his marital home because that property was, in part, the property of another. We conclude, however, that Sevelin is entitled to sentence credit for the time he spent at an inhouse rehabilitation center because he was in constructive custody as defined by § 946.42(1)(a), STATS., during his stay at the center. We therefore reverse the postconviction order and remand to the trial court to enter an order crediting Sevelin with an additional eighty-two days toward his sentence.

---

the inmate will not likely be allowed to attend a low-security treatment facility in the first place.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.