STATE of Wisconsin EX REL. Eugene HARRIS, Petitioner-Appellant,

v.

Judy SMITH, Warden, Oshkosh Correctional Institution, Respondent-Respondent.

Court of Appeals

*No. 97–2193. Submitted on briefs March 30, 1998.—Decided May 13, 1998.*

(Also reported in 582 N.W.2d 131.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Eugene Harris, pro se.*

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Eileen W. Pray*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. Eugene Harris appeals pro se from an order denying his petition for a writ of habeas corpus. In his habeas petition, Harris challenged a decision by the Department of Corrections (DOC) to terminate him from the Division of Intensive Sanctions (DIS) and return him to a prison setting. Specifically, Harris claimed that the DOC failed to accord him a due process hearing before revoking his DIS status. We affirm the circuit court's determination that Harris was not entitled to habeas relief.

The facts are not in dispute. On May 20, 1996, while Harris was serving a state prison sentence, the Program Review Committee (PRC)[1] reduced Harris' security classification to "[m]inimum security—community residential confinement." *See* WIS. ADM. CODE § DOC 302.12(1)(f). Based on this reclassification, the PRC transferred Harris to the DIS program. *See* § 301.048(2)(b), STATS.; *see also* WIS. ADM. CODE ch. DOC 333. While in the DIS program, Harris was charged with new offenses—domestic battery and recklessly endangering the safety of another. Based on these allegations, Harris was issued a major violation

---

[1] *See* WIS. ADM. CODE § DOC 302.18.

report. *See* WIS. ADM. CODE § DOC 333.08(2)(b), (2)(c) and (3). Harris refused to sign the violation report and also refused to provide a statement regarding the new charges. However, he did not exercise his right to appeal the violation report pursuant to WIS. ADM. CODE § DOC 333.08(2)(c).

Based upon the report, the DIS staff recommended that Harris be terminated from the intensive sanctions program and that he be returned to prison. *See* WIS. ADM. CODE § DOC 333.09. The PRC reviewed these recommendations and concurred. *See* WIS. ADM. CODE § DOC 333.10(1) & (2). The administrator of the DIS, in turn, approved the PRC's recommendations. *See* WIS. ADM. CODE § DOC 333.10(2). As a result, Harris was returned to the prison setting.

Harris sought habeas corpus relief in the circuit court. Following a telephonic hearing, the court rejected Harris' petition. Harris appeals.

■

A habeas corpus court determines only whether the order resulting in the restraint of liberty was made in violation of the constitution, or whether the entity which issued the order lacked the jurisdiction or legal authority to do so. *See State ex rel. Richards v. Leik*, 175 Wis. 2d 446, 453, 499 N.W.2d 276, 279 (Ct. App. 1993). Harris relies on the law of *Morrissey v. Brewer*, 408 U.S. 471 (1972), and its progeny which hold that probationers and parolees are constitutionally entitled to a full due process hearing before the liberty interest created by probation or parole may be revoked. *See also State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 547–48, 185 N.W.2d 306, 310 (1971). Harris claims that his status under the DIS program created a liberty interest akin to that of a probationer or parolee.

However, in *Santiago v. Ware*, 205 Wis. 2d 295, 322, 556 N.W.2d 356, 366 (Ct. App. 1996), *cert. denied*, 117 S. Ct. 2435 (1997), the court of appeals ruled that a prisoner's liberty interests are not implicated by an administrative transfer from a community residential confinement (CRC) setting pursuant to § 301.046, STATS. In distinguishing CRC from parole, the court said:

> CRC is not a release from institutional life, but an extension of it. Section 301.046, STATS., establishes the community residential confinement program as a correctional institution within the Department of Corrections. DOC "confine[s] prisoners in their places of residence or other places designated by the department." Section 301.046(1). CRC participants are "prisoners" and "inmates." Section 301.046; WIS. ADM. CODE § DOC 327. CRC inmates must "wear an electronic device continuously on the inmate's person." WIS. ADM. CODE § DOC 327.09(1)(q). They . . . remain in the legal custody of, and in institutional status with, the Department of Corrections. Section 301.046(2); WIS. ADM. CODE § DOC 327.07(5).

*Santiago*, 205 Wis. 2d at 321–22, 556 N.W.2d at 366 (footnote omitted). Therefore, the court concluded that Santiago "had no liberty interest in his CRC status, [and] he cannot recover under § 1983 for loss of that status and the resulting return to WCA." *Id.* at 322, 556 N.W.2d at 366.

We recognize that in this case the issue is whether Harris is entitled to a due process hearing for purposes of habeas relief whereas in *Santiago* the issue was whether Santiago was entitled to pursue a § 1983 action. We also recognize that here Harris was placed

in the DIS program pursuant to § 301.048, STATS., whereas Santiago was placed in a CRC setting pursuant to § 301.046, STATS. Nonetheless, we see no reason why the logic of the *Santiago* case should not apply to a case such as Harris' for the following reasons.

First, although Santiago was not placed in the intensive sanctions program, both he and Harris were placed in a CRC security classification. Second, and more importantly, the legislative choice of language when describing the intensive sanctions program reflects a custodial situation more akin to prison confinement than the conditional liberty associated with probation or parole. For instance, the legislature states that: (1) the "[p]unishment [of intensive sanctions] is . . . more restrictive than ordinary probation or parole supervision," § 301.048(1)(a), STATS.; (2) intensive sanctions has "[c]omponent phases that are intensive and highly structured," *id.* at (1)(b); (3) intensive sanctions can include electronic monitoring, *see id.* at (3)(a)3; (4) the intensive sanctions participant is deemed to be *"in the custody and under the control of the department"* and is designated, *"a prisoner,"* except for purposes of parole revocation, *id.* at (4)(a) (emphasis added); and (5) "[t]he department shall operate the program *as a correctional institution," id.* at (4)(b) (emphasis added). Thus, we reject Harris' attempt to equate his status to that of lesser forms of custody such as parole.

We also reject Harris' attempt to bring this case under the United States Supreme Court's ruling in *Young v. Harper*, 117 S. Ct. 1148 (1997). There, the Supreme Court considered whether an Oklahoma "preparole" program to alleviate prison overcrowding was sufficiently akin to parole such that a due process hearing was required. *See id.* at 1150. The Supreme

Court held that the program differed from parole in name only, and therefore a due process hearing was required before preparole status could be revoked. *See id.*

Since we have already held that the DIS status did not confer a liberty interest in Harris, *Young* does not apply in this case. Instead, his transfer from the program back to the prison setting was simply an administrative change in placement from a lesser form of confinement to a higher one. Harris therefore was not entitled to habeas corpus relief.

We stress that our decision does not leave Harris, and those similarly situated, without relief. Section 301.048(3)(d), STATS., expressly provides that a prisoner may seek review of a final decision relating to "sanctions, discipline or revocation under or termination from the intensive sanctions program." However, the statute provides that such relief may be pursued "only by the common law writ of certiorari." *See id.* In its respondent's brief, the State correctly notes that Harris should have pursued this avenue of relief. However, even in the face of this cue from the State, Harris persists in his reply that he is entitled to habeas relief.

We recognize our obligation to liberally construe a pro se litigant's pleadings to state the correct basis for relief. *See bin-Rilla v. Israel*, 113 Wis. 2d 514, 521–22, 335 N.W.2d 384, 388–89 (1983). However, even construing Harris' pleading as one in certiorari, Harris has offered us no argument as to why he is entitled to certiorari relief. Instead, as noted, he spurns that opportunity and continues to argue that habeas is the proper remedy. Our obligation to liberally construe a pro se litigant's pleading assumes that the litigant has otherwise made a proper argument for relief, albeit

under the wrong label. Our obligation does not extend to creating an issue and making an argument for the litigant. We cannot serve as both advocate and judge. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992).[2]

We affirm the circuit court order denying Harris' petition for habeas corpus relief.

*By the Court.*——Order affirmed.

---

[2] Even if we addressed this case under the law of certiorari, Harris would likely lose because, according to the record in this case, he failed to appeal the violation report pursuant to WIS. ADM. CODE § DOC 333.08(2)(c)1. If he had done so, then Harris could have pursued further review which would have produced a final agency determination. As such, Harris has failed to exhaust his administrative remedies. *See State ex rel. Braun v. Krenke*, 146 Wis. 2d 31, 39, 429 N.W.2d 114, 118 (Ct. App. 1988).