STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Paul E. MAGNUSON, Defendant-Appellant.

Supreme Court

*No. 98–1105–CR. Oral argument January 7, 2000.—Decided February 29, 2000.*

2000 WI 19

(Also reported in 606 N.W.2d 536.)

For the plaintiff-respondent-petitioner the cause was argued by *Lara M. Herman*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant, there was a brief and oral argument by *Keith A. Findley*, Madison.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, the State of Wisconsin, seeks review of an unpublished decision of the court of appeals that reversed a circuit court order denying the defendant's request for sentence credit.[1] The State contends that the defendant is not entitled to sentence credit since he was not in custody while released on bond to home detention with electronic monitoring. We determine that an offender's status constitutes custody for sentence credit purposes when the offender is subject to an escape charge for leaving that status. Because we conclude that the defendant here was not in custody, we reverse the court of appeals.

¶ 2. The relevant facts are not in dispute. The defendant, Paul E. Magnuson, was charged with eight counts of securities fraud on January 17, 1996. Bail was set at $12,000 per count, for a total of $96,000. Unable to post bail, Magnuson remained in jail.

¶ 3. Trial preparation in this securities fraud case required Magnuson's examination of thousands of pages of documents and computer records. However, institutional rules that prohibited access to more than two to four inches of documents per visit rendered such preparation difficult. As a result, Magnuson's attorney filed a motion requesting bail modification and reduction.

¶ 4. The circuit court modified bail to a $10,000 signature bond on each count and required that others

---

[1] *State v. Magnuson*, No. 98–1105–CR, unpublished slip op. (Ct. App. Feb. 18, 1999) (reversing order of circuit court for Dane County, Sarah B. O'Brien, Judge).

co-sign the bond. As part of the bond, the court ordered Magnuson to reside with either his pastor, John Clark, or his other co-signers. He chose to reside with Pastor Clark.

¶ 5. The court imposed additional conditions of release on bond. Magnuson was subject to a nightly curfew that confined him to the Clark residence between the hours of 7:00 p.m. to 7:00 a.m. A subsequent modification extended the hours to 9:30 p.m. on Tuesdays to allow him to participate in substance abuse counseling and to 11:00 p.m. on other days, provided that he was attending church activities. This home detention as a condition of bond was not pursuant to an order from the sheriff or the Department of Corrections under Wis. Stat. § 302.425 (1997–98).[2]

¶ 6. Magnuson was formally supervised by a bail monitoring program and was required to wear an electronic monitoring bracelet to ensure his presence within the Clark home during his curfew hours. The electronic bracelet sent signals to monitoring officials every 16 seconds and allowed Magnuson a roaming range of 75 feet from the monitor installed in the home. Officials from the Division of Intensive Sanctions (DIS) were responsible for detecting any violations of the monitoring, although Magnuson was not formally placed within the DIS program.

¶ 7. As a participant in the bail monitoring program, Magnuson was obligated to contact bail monitoring authorities every morning and submit to urinalysis as directed. The authorities also required face-to-face contact at least once a week. Other conditions of bond required Magnuson to: 1) participate in drug and alcohol treatment; 2) surrender his passport;

---

[2] Unless otherwise noted, all further references to the Wisconsin Statutes will be to the 1997–98 volumes.

3) remain in Dane County during non-curfew hours; 4) avoid contact with named victims; 5) refrain from possessing or consuming any alcohol or drugs; 6) make all scheduled court appearances; and 7) refrain from involvement in further criminal activity.

¶ 8.   The circuit court released Magnuson on bond to the care of Pastor Clark on June 12, 1996. He subsequently pled no contest to three of the original eight counts of securities fraud. Magnuson remained under Clark's care until December 11, 1996, when the pastor notified bail monitoring authorities that he disapproved of Magnuson's behavior. However, Pastor Clark reported no violations of the signature bond. Magnuson was ordered back into custody the following day and cash bail was set at $25,000 on each of the three counts. Unable to post bail, he remained in jail.

¶ 9.   The circuit court later sentenced Magnuson to an aggregate term of eight years imprisonment, followed by seven years probation, and granted 229 days of sentence credit for the time he spent in jail. Magnuson subsequently filed a post-conviction motion seeking sentence modification and credit for the six months he resided with Pastor Clark as a condition of his bond. The court denied the motion, concluding that this home detention with electronic monitoring as a condition of bond did not constitute custody for sentence credit purposes.

¶ 10.   Magnuson appealed the denial of additional sentence credit, and the court of appeals reversed. In an unpublished opinion, the court repeatedly expressed disfavor with *State v. Collett*, 207 Wis. 2d 319, 558 N.W.2d 642 (Ct. App. 1996), which adopted a case-by-case analysis to determine whether a defendant is in custody for purposes of sentence credit. *State v. Magnuson*, No. 98–1105–CR, unpublished slip op.,

5–7 (Ct. App. Feb. 18, 1999). Noting that it was nevertheless constrained to follow precedent and to apply the *Collett* test, the court of appeals concluded that the bond conditions to which Magnuson was subject were restrictive enough to constitute the "functional equivalent of confinement." *Id.* at 6.

¶ 11. This case presents two issues. The first issue addresses the definition of custody for purposes of sentence credit under Wis. Stat. § 973.155. The second issue requires an analysis of whether Magnuson's bond conditions satisfied the definition of custody, thereby entitling him to sentence credit. Statutory interpretation and the application of a statute to particular facts present questions of law that we review independently of the determinations rendered by the circuit court and the court of appeals. *Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 88, 596 N.W.2d 417 (1999); *Meyer v. School Dist. of Colby*, 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999).

¶ 12. We begin our analysis of the first issue with an examination of Wis. Stat. § 973.155. This statute governs sentence credit and states in relevant part:

> (1)(a)   A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
>> 1.    While the offender is awaiting trial;

2. While the offender is being tried; and
3. While the offender is awaiting imposition of sentence after trial.

¶ 13. Our initial step in statutory interpretation focuses on the plain language of the statute to discern the legislative intent. *Beard v. Lee Enterprises, Inc.*, 225 Wis. 2d 1, 10, 591 N.W.2d 156 (1999). Here, the plain language of Wisconsin Stat. § 973.155(1)(a) does not explicitly define custody. However, numerous cases have interpreted the sentence credit statute and concluded that the plain meaning of custody under the statute corresponds to the definition of custody contained in the escape statute, Wis. Stat. § 946.42.

¶ 14. In *State v. Gilbert*, 115 Wis. 2d 371, 378–79, 340 N.W.2d 511 (1983), this court first encountered the issue of determining what constituted custody for sentence credit purposes and defined custody by reference to the escape statute. Section 946.42(1)(a)[3] defines custody to include:

[W]ithout limitation actual custody of an institution, including a secured correctional facility, as defined in s. 938.02(15m). . .a secure detention facility, as defined in s. 938.02(16). . .or of a peace officer or institution guard and constructive custody of prisoners. . .temporarily outside the institution whether for the purpose of work, school, medical care, a leave granted under s. 303.068, a temporary leave or furlough granted to a juvenile or otherwise.

¶ 15. The *Gilbert* court also referenced the dictionary definition of custody, but courts thereafter

---

[3] At the time of *Gilbert*, the pertinent subsection of the escape statute was numbered 5(b), which defined custody. That subsection has subsequently been amended and renumbered to 1(a). This change does not affect our analysis.

have settled on the statutory definition, consistently referring to the escape statute for guidance. *See e.g., State v. Cobb,* 135 Wis. 2d 181, 184–85, 400 N.W.2d 9 (Ct. App. 1986); *State v. Pettis,* 149 Wis. 2d 207, 209–11, 441 N.W.2d 247 (Ct. App. 1989); *State v. Sevelin,* 204 Wis. 2d 127, 135, 554 N.W.2d 521 (Ct. App. 1996). The statute aptly incorporates the dictionary definition and is not inconsistent with it. *Pettis,* 149 Wis. 2d at 210.

¶ 16.   Although *Gilbert* intended to provide clear guidelines for determining custody in the context of sentence credit, the court in *State v. Collett* nevertheless employed the same statutory definition of custody found in Wis. Stat. § 946.42(1)(a) to set forth the requirement of a case-by-case analysis. 207 Wis. 2d 319, 324–25, 558 N.W.2d 642 (Ct. App. 1996). Looking to the statute, the court determined that the enumerated examples of custody were "not exhaustive but only illustrative." *Id.* at 324.

¶ 17.   At issue in *Collett* were the restrictions placed on a Department of Intensive Sanctions (DIS) participant and whether those restrictions constituted custody, thereby entitling the participant to sentence credit for time spent in the DIS program. Characterizing the *Gilbert* rule as "impractical," the *Collett* court embarked upon uncharted waters and established a new test to determine custody for purposes of sentence credit.

¶ 18.   This test requires circuit courts to evaluate the specific restrictions on an offender's freedom and to examine whether they represent "the functional equivalent of confinement" and are "so substantial as to amount to being locked in at night or its equivalent." *Id.* at 325. Since the *Collett* court did not have a fully developed record of the particular DIS restrictions in

47

the case, it remanded to the circuit court for a determination pursuant to its new rule of whether the defendant was in custody for sentence credit purposes. *Id.* at 325–26.

¶ 19.   In this case, the State maintains that for sentence credit purposes, courts should continue to utilize the definition of custody found in the escape statute. The State contends that by dispensing with the established approach to defining custody, the *Collett* court has replaced a bright-line rule with case-by-case analysis that is "burdensome, unworkable and confusing."

¶ 20.   Magnuson concedes the utility of adopting a bright-line rule yet disagrees as to the precise rule this court should pronounce. He maintains that the preferred bright-line rule is one that supplements the established approach of referring to the escape statute with the additional requirement that custody include all home detention with electronic monitoring.

¶ 21.   Magnuson argues that the escape statute should be read in pari materia with other statutes that provide for escape charges, including provisions governing home detention, community residential confinement, and intensive sanctions. According to Magnuson, all of the relevant statutes taken in conjunction reflect the legislative intent to view home confinement under electronic monitoring as custody.

¶ 22.   We agree with both parties that a bright-line rule is the better approach for determining custody in the context of sentence credit. The *Collett* rationale for determining custody, which requires sentencing courts to engage in detailed inquiries as to the specific restrictions presented in each case, imposes an unnecessary burden upon those courts and hinders

consistency. Yet we do not adopt wholesale either party's articulation of a bright-line rule.

¶ 23.    The State advances a rule that fails to acknowledge the "without limitation" language of Wis. Stat. § 946.42(1)(a), language that precludes the escape statute from being as bright a line as the State maintains. Moreover, the State's rule is stagnant and falls short of recognizing the evolving methods of custody in our criminal justice system.

¶ 24.    Although Magnuson is cognizant of the developing methods of confinement, he focuses solely on one aspect, home detention with electronic monitoring. His rule fails to account for other custodial situations in which the legislature has specifically indicated that an escape charge will lie. Additionally, Magnuson's bright-line rule fails to offer clear contours as to exactly what degree of electronic monitoring it envisions.

¶ 25.    Our rule encompasses both precedent as well as the developing methods of custody and is intended to promote uniformity. We determine that for sentence credit purposes an offender's status constitutes custody whenever the offender is subject to an escape charge for leaving that status.

¶ 26.    In establishing this definition, we modify the approach set forth in *Gilbert* in that we do not limit the inquiry to the definition of custody contained only in Wis. Stat. § 946.42(1)(a). Instead, we acknowledge the importance of reading statutes in pari materia, as Magnuson suggests, and include for reference other statutory provisions in which the legislature has classified certain situations as restrictive and custodial by attaching escape charges for an unauthorized departure from those situations.

49

¶ 27. Subsequent to *Gilbert*, the legislature has enacted several statutes consistent with the *Gilbert* assessment of custody dependent upon an offender's exposure to charges of criminal escape. This is consistent with the "without limitation" language of Wis. Stat. § 946.42(1)(a) because it recognizes modern methods of confinement.

¶ 28. For example, Wis. Stat. § 301.046(1) addresses the community residential confinement program, describing this program as a "correctional institution" and the residents as "prisoners." Under this provision, an offender placed in community residential confinement may be monitored by electronic surveillance. Wis. Stat. § 301.46(5). An escape charge lies upon unauthorized flight from the program. Wis. Stat. § 301.46(6).

¶ 29. Similarly, Wis. Stat. § 301.048 provides that the Department of Corrections (DOC) shall administer an intensive sanctions program that imposes various sanctions upon participants.[4] Sanctions may include electronic monitoring, intensive supervision, mandatory substance abuse treatment, or a combination of restrictions. Wis. Stat. § 301.048(3)(a). In addition, the failure to comply with the imposed conditions of this program subjects the offender to a charge of escape under § 946.42(3)(a). Wis. Stat. § 301.048(5).[5]

---

[4] A circuit court may no longer sentence an offender convicted of a felony occurring on or after December 31, 1999 to intensive sanctions. *See* 1997 Wis. Act 283, § 428. However, the intensive sanctions program remains otherwise in effect and is relevant for the purposes of this case.

[5] By recognizing DIS placement as custody, we disagree with *Collett*'s conclusion that DIS participation does not automatically constitute custody but rather must be determined

¶ 30. Wisconsin Stat. § 302.425 governs home detention and also provides for electronic monitoring of persons in detention. This provision requires placement by the sheriff, the superintendent of a correctional institution, or the DOC and classifies persons placed in detention as "prisoners." Wis. Stat. § 302.425(3). Furthermore, "[a]ny intentional failure of a prisoner to remain within the limits of his or her detention or to return to his or her place of detention" qualifies as an escape. Wis. Stat. § 302.425(6). Thus, the aforementioned statutes provide additional reference points for circuit courts in determining whether a defendant is in custody for sentence credit purposes.[6]

¶ 31. Today we adopt a definition of custody that remains true to precedent, yet also captures other custodial and restrictive situations not enumerated explicitly within Wis. Stat. § 946.42(1)(a).[7] In sum, we determine that for purposes of sentence credit an offender's status constitutes custody whenever the

based on the specific restrictions involved. *State v. Collett*, 207 Wis. 2d 319, 325, 558 N.W.2d 642 (Ct. App. 1996).

[6] Other situations to which escape charges and penalties apply include Wis. Stat. § 303.10 (county work camp), Wis. Stat. § 303.065 (work release plan for prison inmates), and Wis. Stat. § 938.538 (serious juvenile offender program). However, these statutes are not directly at issue in this case.

[7] To the extent that prior cases have refused to grant sentence credit for situations in which an offender would be subject to escape charges under the aforementioned statutes, they are limited by our holding today. *See State v. Swadley*, 190 Wis. 2d 139, 526 N.W.2d 778 (Ct. App. 1994)(refusing to grant sentence credit for time spent in home detention with electronic monitoring under Wis. Stat. § 302.425). *See also State v. Olson*, 226 Wis. 2d 457, 595 N.W.2d 460 (Ct. App. 1999) (holding that the specific DIS restrictions at issue do not constitute custody by employing *Collett* analysis).

offender is subject to an escape charge for leaving that status.

¶ 32.    Having determined the appropriate definition of custody for purposes of sentence credit, we next address the second issue of whether Magnuson's bond conditions rendered him in custody according to our definition. Magnuson asserts that the various conditions imposed upon his release on bond, particularly home confinement with electronic monitoring, transformed his release into custody. Because the release conditions of his bond did not subject Magnuson to an escape charge under any of the pertinent statutes and are not covered by the escape statute, we disagree with his assertion.

¶ 33.    Magnuson was not placed in a community residential confinement program under Wis. Stat. § 301.046. Unlike the defendant in *State v. Holliman*, 180 Wis. 2d 348, 509 N.W.2d 73 (Ct. App. 1993), who was both paroled to DIS and placed in a community residential program pursuant to a specific agreement, Magnuson was not placed in such confinement pursuant to any agreement or directive of the DOC or the sheriff.

¶ 34.    Likewise, Magnuson was not a participant in the intensive sanctions program under Wis. Stat. § 301.048. Although he may have been monitored by DIS officials within a bail monitoring program, Magnuson was not actually sentenced and placed in the DIS program. In addition, he was neither directed by the DOC to participate in intensive sanctions nor paroled to the program.

¶ 35.    Simply because his bond included conditions similar to those in intensive sanctions does not render Magnuson a participant in the program, subject to an escape charge for failure to comply with those

conditions. If we were to determine that conditions analogous to DIS sanctions constitute custody, we would essentially find ourselves back to square one, with a rule for determining custody as amorphous as the *Collett* test, rather than the rule we have adopted today.

¶ 36.    Furthermore, Magnuson's nightly confinement in Pastor Clark's residence was not the equivalent of placement in home detention pursuant to an order from the sheriff or the DOC under Wis. Stat. § 302.425. Rather, his situation closely resembles that presented in *State v. Pettis*, 149 Wis. 2d 207, 441 N.W.2d 247 (Ct. App. 1989).

¶ 37.    In *Pettis*, the defendant requested sentence credit for the time he spent in home confinement as a condition of bail. Rejecting his request for credit, the court reasoned that although "Pettis could suffer certain legal consequences for violating his home detention," exposure to such negative consequences as a charge of bail jumping did not necessarily transform his situation into one of custody. *Id.* at 212.

¶ 38.    Although *Pettis* was decided prior to the enactment of Wis. Stat. § 302.425, its holding nevertheless remains valid when a defendant has not been placed in home detention by a sheriff, a superintendent, or the DOC as Wis. Stat. § 302.425 requires. Like the defendant in *Pettis*, Magnuson would face charges of bail jumping or possible alterations of the conditions of his release for violating his bond conditions. An escape charge would not lie upon his departure from home detention or his violation of the electric monitoring as a condition of bond. Thus, Magnuson was not in custody under any of the statutes presented.

¶ 39. Magnuson maintains that the failure to satisfy the requirements of those specific statutes does not preclude his entitlement to sentence credit. He asserts that we must then revert to an examination of the escape statute, under which he is entitled to sentence credit. We are not persuaded, however, that Magnuson's conditions of release on bond fall under the ambit of the escape statute.

¶ 40. Wisconsin Stat. § 946.42(1)(a) requires that a person be in actual or constructive custody under one of the listed situations. Actual custody includes custody of an institution, a secured correctional facility, a secure detention facility, a peace officer, or an institutional guard. *Id.* Magnuson's conditions of release do not correspond to any of those situations, and thus do not constitute actual custody.

¶ 41. Magnuson's bond conditions also do not constitute constructive custody under the escape statute. Constructive custody includes temporary leave for the purpose of work, school, medical care, or otherwise. *Id.* In releasing Magnuson on bond, the circuit court considered several factors and later explained that the most significant factor was Magnuson's need to assist counsel with trial preparation. However, release on bond for trial preparation is not a temporary release for any of the specified purposes.

¶ 42. Magnuson's situation is distinguishable from that of the defendant in *State v. Sevelin*, 204 Wis. 2d 127, 554 N.W.2d 521 (Ct. App. 1996). In *Sevelin*, the court specifically granted the defendant a "furlough" to attend inpatient alcohol treatment as part of bail modification. *Id.* at 130. The court noted that the defendant's release was undoubtedly temporary and that he would be required to return to jail upon leaving or completing his treatment. *Id.* at 133.

¶ 43.   In this case, the court did not impose a similar requirement upon Magnuson. He was not required to return to jail once he completed assisting counsel in trial preparation. Furthermore, although Magnuson was also obligated to attend substance abuse counseling as a condition of his bond, the court did not grant him a furlough or leave to specifically attend treatment, as did the court in *Sevelin*. Magnuson's release on bond therefore does not correspond to the type of release set forth in Wis. Stat. § 946.42(1)(a) as constructive custody.

¶ 44.   Magnuson next contends that the escape statute is, in and of itself, broad, vague, and expansive. He seizes upon the "without limitation" language of Wis. Stat. § 946.42(1)(a) and argues that the expansive nature of the statute covers his situation, even if not specifically enumerated as custody. He maintains that the statute may be read to include situations in which there is no actual physical restraint or control.

¶ 45.   For support, Magnuson refers to cases that also address the purported broadness of the statutory language. *See State v. Hoffman*, 163 Wis. 2d 752, 760, 472 N.W.2d 558 (Ct. App. 1991) (noting that under plain meaning of escape statute, actual custody does not define the entire scope of the term custody for purposes of arrest). *See also State v. Scott*, 191 Wis. 2d 146, 528 N.W.2d 46 (Ct. App. 1995) (custody upon lawful conviction of crime); *State v. Adams*, 152 Wis. 2d 68, 447 N.W.2d 90 (Ct. App. 1989) (custody relating to arrest). These cases are of limited usefulness, however, for they do not address custody as it relates to sentence credit.

¶ 46.   Here we are confronted with a situation in which Magnuson was subject to a charge of felony bail jumping for a violation of the conditions of his bond. He

was not in danger of being charged with escape under any applicable statute. Although Magnuson could suffer negative legal consequences for leaving his home detention with electronic monitoring or for violating his other release conditions, we do not believe that these consequences transformed his situation into custody for entitlement to sentence credit. *Pettis*, 149 Wis. 2d at 212.

¶ 47. In summary, we conclude that an offender's status constitutes custody for sentence credit purposes when the offender is subject to an escape charge for leaving that status. We reject the burdensome case-by-case analysis established in *Collett* and replace it with a rule intended to provide clear guidelines for sentencing courts in their determination of sentence credit.

¶ 48. Applying our rule to Magnuson, we conclude that his conditions of release on bond, including home detention with electronic monitoring, did not subject him to an escape charge for any violation of bond conditions and therefore did not render him in custody. Since Magnuson was not in custody, he is not entitled to sentence credit under Wis. Stat. § 973.155. Accordingly, we reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.