STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven L. PFEIL, Defendant-Appellant.

Court of Appeals

*No. 2006AP2771–CR. Submitted on briefs September 12, 2007.
—Decided October 17, 2007.*

2007 WI App 241

(Also reported in 742 N.W.2d 573.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John P. Tedesco*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Eileen W. Pray*, assistant attorney general.

Before Brown, C.J., Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. Steven L. Pfeil appeals from a judgment convicting him as a habitual criminal of operating while intoxicated, ninth offense, and from an order denying postconviction relief. Pfeil argues that the penalty enhancer for habitual criminality under

Wis. Stat. § 939.62(2) (2005–06)[1] does not apply because his two relevant offenses were more than five years apart. He contends that for purposes of the statutory computation, the time he spent in the least restrictive phase of the intensive sanctions program was not "time . . . spent in actual confinement serving a criminal sentence."

¶ 2. We disagree. We conclude that supervision under the intensive sanctions program constitutes "actual confinement" within the meaning of Wis. Stat. § 939.62(2). The intensive sanctions program operates as a correctional institution, is deemed a confinement classification, and is more restrictive than ordinary probation or parole supervision or extended supervision. Under it, Pfeil was a prisoner and became eligible for sentence credit. We therefore decline Pfeil's request that we reverse the judgment and remand with instructions to commute the enhancer portion of his sentence. Instead, we affirm.

## BACKGROUND

¶ 3. The facts are not in dispute. In May 1997, Pfeil pled guilty to felony injury by intoxicated use of a vehicle and to misdemeanor causing injury by operating a vehicle while intoxicated, in violation of Wis. Stat. §§ 940.25(1)(a) and 346.63(2)(a)1. Pfeil was sentenced to a four-year term in the division of intensive sanctions (DIS) on the felony count and a consecutive term of probation on the misdemeanor.[2] *See* Wis. Stat. §§ 973.032 and 301.048; *see also* Wis. Admin. Code

[1] All Wisconsin Statute references are to the 2005–06 version unless otherwise noted.

[2] A circuit court no longer may sentence to DIS an offender convicted of committing a felony on or after December 31, 1999.

§ DOC 333.03(5) (Dec. 2006).[3] DIS has several component phases, often ordered in stages of decreasing restriction and supervision. *See* Wis. Stat. § 301.048(3).

¶ 4. Pfeil served the first phase of his sentence, from September 19, 1997,[4] to January 8, 1998, in a Type 1 prison. *See* Wis. Stat. § 301.01(5). Upon his release from prison on January 8, Pfeil lived at home, obtained his driver's license and worked in the community, supervised by DIS through electronic monitoring and an alcohol monitoring program. DIS released Pfeil from electronic monitoring on June 22, 1998, but continued to perform breath testing for alcohol until September 8, 1998. After September 8, DIS supervised Pfeil only through telephone calls or personal visits. Pfeil was paroled from DIS supervision on December 28, 1998. It is this 189–day period, June 22 through December 28, 1998, that is at issue in this case. Pfeil argues that this period of time should have been included as part of the five-year repeater computation because he was not in "actual confinement."

¶ 5. In February 2002, Pfeil's probation on the misdemeanor conviction was revoked. As a result, he served a county jail sentence from February 22 to September 5 with work release privileges. In March 2004, the State filed the instant criminal complaint charging Pfeil with ninth-offense OWI with a habitual

*See* 1997 Wis. Act 283, § 428. DIS otherwise remains in effect, however. *See State v. Magnuson*, 2000 WI 19, ¶ 29 n.4, 233 Wis. 2d 40, 606 N.W.2d 536.

[3] All Wisconsin Administrative Code references are to the December 2006 version.

[4] The amended complaint and amended information recite September 19; the trial court decision recites September 15. Neither party raises this discrepancy on appeal. For its impact on computing the statutory five-year period, see *infra* note 5.

criminality penalty enhancer based upon Pfeil's continuous confinement to DIS from September 19, 1997, to December 28, 1998, and his 2002 jail term. The August 2004 information mirrored those charges.

¶ 6. Pfeil moved to strike the habitual criminality penalty enhancer. He argued that the January 9 through December 28, 1998 time period when he was out of prison and working in the community under DIS monitoring should not be excluded from the five-year "look-back" calculation under Wis. Stat. § 939.62(2). After a hearing at which a DIS agent testified, Judge Paul F. Reilly denied Pfeil's motion. Relying on *State v. Crider*, 2000 WI App 84, ¶ 12, 234 Wis. 2d 195, 610 N.W.2d 198, Judge Reilly concluded that Pfeil would be entitled to sentence credit for DIS confinement. Relying on *State v. Magnuson*, 2000 WI 19, ¶ 31, 233 Wis. 2d 40, 606 N.W.2d 536, the judge also observed that Pfeil could be charged with escape if he had absconded from the DIS confinement. Thus, the judge held that Pfeil was in "actual confinement" under DIS, triggering application of the repeater enhancer.

¶ 7. Pfeil pled guilty to the OWI charge with the habitual criminality enhancer and was sentenced to a bifurcated eight-year sentence of five years of initial confinement. Represented by new counsel, Pfeil moved for postconviction relief challenging only the 189–day period from June 22 to December 28, 1998, during which he remained under DIS supervision but was off electronic monitoring and lived and worked in the community. Here again, the parties debated the *Crider* case. The postconviction court, Judge Linda Van De Water, denied the motion. Like Judge Reilly, Judge Van De Water reasoned that, since Pfeil had earned sentence credit while serving the DIS sentence and would

have been subject to escape charges had he absconded, he was in "actual confinement." Pfeil appeals.

## DISCUSSION

¶ 8. This appeal focuses on Wis. Stat. § 939.62, which states in relevant part:

**939.62 Increased penalty for habitual criminality. (1)** If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed . . . the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

. . . .

(b) A maximum term of imprisonment of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 4 years if the prior conviction was for a felony.

. . . .

**(2)** The actor is a repeater if the actor was convicted of a felony during the 5-year period immediately preceding the commission of the crime for which the actor presently is being sentenced . . . . *In computing the preceding 5-year period, time which the actor spent in actual confinement serving a criminal sentence shall be excluded.* (Emphasis added.)

As this statute reveals, it is possible that the statutory five-year period will not coincide with a calendar five-year period. A court computes the statutory five-year period as follows: (1) determine the time between felony convictions, (2) determine the time spent in actual confinement serving a criminal sentence, (3) subtract the actual confinement from the time

242

between the felony convictions, and (4) compare the resulting subtotal to the number of days in five years. The second task, determining the time spent in actual confinement, is at issue here.

¶ 9. When denying Pfeil's motion challenging the repeater allegation, Judge Reilly made the following computations:

(1) **2484 days** between Pfeil's May 23, 1997, and March 11, 2004, felony convictions;

(2) **664 days** spent in actual confinement serving a criminal sentence (469 days while under DIS supervision between September 15, 1997, and December 28, 1998, plus 195 days in Huber custody from February 22 to September 5, 2002);

(3) 2484 days minus 664 days equals **1820 days**; and

(4) **1826 days** in the preceding five years (365 days per year for five years plus one leap-year day); 1826 minus 1820 equals 6, leaving Pfeil six days shy of five years.[5]

¶ 10. The State and Pfeil dispute whether Pfeil was in "actual confinement" for the 189 days between June 22 and December 28, 1998, when Pfeil was off electronic monitoring but still under DIS supervision. We thus must construe WIS. STAT. § 939.62, especially the term "actual confinement." Statutory construction

---

[5] As noted *supra* note 4, various record cites indicate that Pfeil began serving time in the Type 1 prison on September 19, 1997. Also, we believe a second leap-year day should have been added: one each for 2000 and 2004. Using September 19 and two leap-year days, our calculation in (2) would be 660 days, in (3) would be 1824, and in (4) would be 1827 days. In our computation, Pfeil still would be shy of five years, but by three days rather than six.

raises a question of law, which we review independently. *State v. Delaney*, 2003 WI 9, ¶ 12, 259 Wis. 2d 77, 658 N.W.2d 416.

¶ 11. We first look generally at the intensive sanctions program and Pfeil's basic relationship to it. DIS is a Department of Corrections confinement classification. *See* Wis. Admin. Code § DOC 333.02. It is considered a state prison and is operated as a correctional institution. Wis. Stat. §§ 301.048(4)(b) and 302.01(1)(f). A person sentenced to DIS is a prisoner. Sec. 301.048(2)(am)1. and (4)(a). DIS may impose upon a convicted felon various sanctions ranging from confinement in a Type I facility to electronic monitoring, intensive supervision, mandatory substance abuse treatment, or a combination of restrictions. *See* § 301.048(3). Failure to comply with the imposed conditions subjects a person in custody to a charge of escape under Wis. Stat. § 946.42(3)(a). Sec. 301.048(5); *see Magnuson*, 233 Wis. 2d 40, ¶ 29.

¶ 12. Both Judge Reilly and Judge Van de Water held that "actual confinement" is measured by the amount of sentence credit for which a prisoner would qualify during the sentence, *Crider*, 234 Wis. 2d 195, ¶ 12, and that sentence credit is appropriate if a prisoner is subject to escape charges during confinement, *see State v. Cobb*, 135 Wis. 2d 181, 184, 400 N.W.2d 9 (Ct. App. 1986).

¶ 13. Not surprisingly, the State agrees. The issue in *Crider* was whether jail time served as a condition of probation was "actual confinement serving a criminal sentence." *Crider*, 234 Wis. 2d 195, ¶ 6. In answering that it was, the court of appeals reasoned that Crider would have been entitled to sentence credit for the jail time were his probation revoked, and it would be incongruous to permit sentence credit for the confine-

ment time but not to recognize it as "actual confinement" under the repeater statute. *Id.*, ¶ 8.

¶ 14. Pfeil contends that this discussion of sentence credit in *Crider* is "mere dicta" and that the trial judges in this case erred in relying on it. We strongly disagree. The court of appeals discussion of sentence credit was not an irrelevant aside. To the contrary, it clarified the decision's core rationale.

¶ 15. Pfeil undeniably enjoyed fewer restrictions and increasing liberties as his sentence progressed. He lived at home, worked at his job, and was freed from electronic monitoring and alcohol testing. We cannot agree, however, that the change in the outward manifestations of supervision signified a simultaneous change in his essential confinement status within the meaning Wis. Stat. § 939.62(2). We see no support for that argument in the statutes or the case law.

¶ 16. The DIS statutory scheme contemplates a flexible program of incrementally greater privileges. Nonetheless, it is deemed to be a state prison, it is run as a correctional institution, and it considers participants such as Pfeil to be prisoners subject to an escape charge in the event they fail to comply with an imposed condition. We observed in another case that "the legislative choice of language when describing the intensive sanctions program reflects a custodial situation more akin to prison confinement than the conditional liberty associated with probation or parole." *State ex rel. Harris v. Smith*, 220 Wis. 2d 158, 163, 582 N.W.2d 131 (Ct. App. 1998). For instance, Wis. Stat. § 301.048(1) describes the intensive sanctions program as punishment that is "more restrictive than ordinary probation or parole supervision" and in component phases that are "intensive and highly structured," and § 301.048(4) provides that a DIS participant is considered a prisoner "in the

custody and under the control of the [Department of Corrections]." *Harris*, 220 Wis. 2d at 163.

¶ 17. On a related theme, Pfeil contends that by appending "actual" to "confinement," the legislature signaled its intent that "constructive confinement . . . is NOT adequate." But as we have already demonstrated, Pfeil's custody under DIS was "actual," not "constructive." Moreover, this argument falters because Pfeil does not apply it consistently. On appeal, he challenges only the June through December 1998 period, but not the earlier January through June 1998 time frame when he was monitored electronically, despite asserting that during that earlier time he "lived at home . . . worked at his job in the community, and even became relicensed to drive."

¶ 18. Reading the statutes, *Crider* and *Harris* together, we disagree that Pfeil's "actual confinement" ended with his release from electronic monitoring. We conclude that Pfeil is a repeater because the entire time spent under DIS supervision was "actual confinement" as contemplated by WIS. STAT. § 939.62(2).

*By the Court.*—Judgment and order affirmed.