ANN WALSH BRADLEY, J. (dissenting).
¶63 The majority bucks an apparent trend in the law of our sister states and federal circuits that have adopted the equitable doctrine of credit for time erroneously spent at liberty. Paying little mind to the plethora of courts that have adopted the doctrine, it summarily dispatches with Friedlander's invocation of equity.
¶64 In my view, persuasive authority from other jurisdictions and fundamental fairness require a deeper examination of this topic.
¶65 When Friedlander was released from prison, he was told by words and actions that he was free to go. Relying on the information he received from Oshkosh Correctional Institution, where he had been previously incarcerated, he took the Department of Corrections at its word.
*668 ¶66 By rejecting the equitable doctrine of credit for time erroneously spent at liberty, the majority inequitably holds Friedlander's reliance on the State against him and allows several state players to escape accountability for their mistakes.
*866 Yet, fundamental fairness appears to rest squarely with Friedlander.
¶67 Adopting the doctrine ensures a fair and equitable way to resolve an uncommon factual scenario. Additionally, consistent with case law, it holds the State to its obligation to provide a certain end date for incarceration and prevents the service of a sentence in installments.
¶68 I conclude that Friedlander should receive the benefit of the equitable doctrine of credit for time erroneously spent at liberty. This conclusion is consistent with the sense of fairness and equity embraced by a majority of the federal circuits and an abundance of state courts that have adopted the doctrine and at odds with the sense of fairness and equity tersely espoused by the majority here.
¶69 Accordingly, I respectfully dissent.
I
¶70 The record throughout this case reflects mistakes by the State and some uncertainty on the part of the court. At the outset, the circuit court was unsure as to where the Department of Corrections would have Friedlander serve the conditional jail sentence that remained after his prison sentence was complete. Majority op., ¶5. At sentencing, the circuit court indicated:
Clearly you'll be serving your sentence when you have a prison sentence and conditional jail in the prison, and that's the Court's expectation, and I doubt that the *669 Department of Corrections will in any way interpret that portion any differently, but it's just a question of once your underlying case is done and if there's still some of this conditional jail time, where they'll have you serve it (emphasis added).
Thus, the circuit court left it to the Department of Corrections to resolve the unanswered question of where it would have Friedlander serve the extra conditional time.
¶71 The uncertainty was resolved when, according to Friedlander, a social worker at Oshkosh Correctional Institution informed him that his conditional jail sentence was satisfied prior to his release. Majority op., ¶8.
¶72 This resolution by the Department of Corrections was underscored when, after completing his prison sentence, Friedlander was released from Oshkosh Correctional Institution instead of being transported to the Jefferson County jail to finish any conditional jail sentence. Id., ¶6. It was further underscored by Oshkosh officials never bothering to notify Jefferson County of Friedlander's release. Id.
¶73 But why would they?
¶74 The sentencing court apparently left to the Department of Corrections the decision as to where the conditional time would be served and they apparently determined it would be served prior to his release from Oshkosh. We now learn, however, that Oshkosh's apparent determination of where Friedlander would serve the extra conditional jail time and their actions supporting that determination were all mistakes.
¶75 To compound the apparently mistaken determination and actions, once Friedlander was released, more mistakes and uncertainty appear.
*670 ¶76 Upon his release, Friedlander immediately met with his probation agent. Id., ¶7. At the initial meeting, the agent either did not know or knew but failed to tell him that he needed to report to jail to serve additional time. Id. Friedlander met with his probation agent a second time. Id. Again, the agent failed to tell him to report to jail or in any way indicate that he had *867 additional time to serve. Id. Neither the probation agent nor Friedlander apparently saw a need to contact the circuit court to clarify whether Friedlander had to serve additional time. Id.
¶77 The Jefferson County Sheriff's Office eventually was concerned about Friedlander's status and contacted his probation agent, who in turn spoke with Friedlander. Id., ¶8. Friedlander immediately contacted the Jefferson County Sheriff's Office after his probation agent informed him of the issue. Id.
¶78 Friedlander relayed to the sheriff's office what his social worker had told him about his conditional jail sentence being satisfied prior to his release. Id. Unsure how to proceed, the sheriff's office wrote a letter to the circuit court asking how to resolve the situation. Id.
¶79 Similarly unsure how to proceed, the circuit court held a hearing. Id., ¶9. After hearing testimony and argument, it ultimately concluded that under existing law Friedlander is not entitled to sentence credit for his time erroneously spent at liberty. Id., ¶11.
II
¶80 Although I agree with the majority's reliance on State v. Magnuson, 2000 WI 19, ¶47, 233 Wis. 2d 40, 606 N.W.2d 536, I part ways with the *671 majority when it brushes off Friedlander's argument that he should be granted sentence credit pursuant to equitable principles. It spurns the litany of our sister states and federal circuits that have adopted the equitable doctrine of credit for time erroneously spent at liberty. See majority op., ¶47 n.12. In summary fashion, the majority dispenses with Friedlander's invocation of the doctrine. See majority op., ¶¶44, 47. In my view, the majority is incorrect in its summary dismissal of Friedlander's legitimate equitable concerns.
¶81 This court has stated that "confinement credit is designed to afford fairness-that a person not serve more time than that for which he is sentenced." State v. Beets, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985). Putting this principle into practice, the Tenth Circuit has determined that "[a] prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments." White v. Pearlman, 42 F.2d 788, 789 (10th Cir. 1930) (emphasis added).[1]
*672 ¶82 In the federal courts, this principle has manifested as "a common law rule, which has been held applicable to federal sentencing, that unless interrupted by fault of the prisoner (an escape, for example)
*868 a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it." Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994). In practice, this means that "[t]he government is not permitted to delay the expiration of the sentence either by postponing the commencement of the sentence or by releasing the prisoner for a time and then reimprisoning him." Id.
¶83 Such a proposition is embodied by the "doctrine of credit for time erroneously spent at liberty." Pursuant to this doctrine, a convicted person is granted "credit against his sentence for time spent at liberty due to 'simple or mere negligence on behalf of the government' and 'provided the delay in execution of sentence was through no fault [of the convicted person].' " In re Roach, 150 Wash.2d 29, 74 P.3d 134, 137 (2003) (citing United States v. Martinez, 837 F.2d 861, 865 (9th Cir. 1988) ).
¶84 The vitality of this doctrine has been recognized by a majority of federal circuit courts and an abundance of state courts.[2] Wisconsin should do the same.
*673 ¶85 Adopting the equitable doctrine would be consistent with the trend in federal and state courts throughout the country that implicitly reject an assertion that it necessarily results in a windfall for defendants. Indeed, many federal and state courts have "moved away from a strict application of the traditional rule requiring a released prisoner to serve his full sentence no matter the circumstances of his release, and have granted an erroneously released prisoner relief based on principles of equity and fairness." Roach, 74 P.3d at 136 (internal citations omitted).
¶86 The doctrine of credit for time erroneously spent at liberty is a fair and equitable way to resolve an infrequent factual situation. It holds the State to its obligation to provide a certain end date for incarceration and prevents the service of a sentence in installments. "The government is not permitted to play cat *674 and mouse with the prisoner, delaying indefinitely the expiation of his debt to society and his reintegration into the free community." Dunne, 14 F.3d at 336. Yet the majority is unbothered by the possibility that Friedlander and others similarly situated may face just the type of piecemeal sentence that federal case law instructs us to avoid.
¶87 This case presents the very "cat and mouse" scenario the equitable doctrine is designed to prevent. Mistakes and uncertainty on the part of multiple state actors-the *869 Oshkosh social worker who told Friedlander his sentence was satisfied, the Oshkosh staff who failed to notify Jefferson County of his release, the probation agent who neglected to tell Friedlander to report to jail, the Jefferson County Sheriff's Office that was unsure how to handle the situation, and the circuit court that was similarly unsure how to address the scenario-resulted in the possibility of Friedlander serving a non-continuous sentence.
¶88 Such a sentence served in installments is, as the Seventh Circuit observed in Dunne, detrimental to the reintegration of prisoners back into society. See id."When courts fail to recognize the doctrine [of credit for time erroneously spent at liberty], erroneously released prisoners who have successfully rehabilitated themselves into society must continually suffer under the auspice that the government may one day require re-incarceration for the service of an unfulfilled sentence." Andrew T. Winkler, Implicit in the Concept of Erroneous Liberty: The Need to Ensure Proper Sentence Credit in the Fourth Circuit, 35 N.C. Cent. L. Rev. 1, 30 (2012).
¶89 Additionally, despite the Department of Corrections, law enforcement, and the circuit court *675 being either mistaken or unsure how to proceed, the majority opines that it is the defendant's responsibility to track his release date. In the majority's view, it is up to Friedlander to tell the State that he may have more time to serve if he is released early through no fault of his own.
¶90 That's easier said than done. Some defendants may have very complex sentences, with overlapping consecutive and concurrent periods of confinement. To expect a defendant to monitor and repeatedly correct the State's math places an untenable and unreasonable responsibility on a defendant-especially when the State indicates by words and actions that he is free.
¶91 In sum, the government, by its words and actions, told Friedlander that he was free and then took it back. Friedlander's rehabilitation and reintegration into society should not be delayed because of the government's errors. He should receive the sentence credit he seeks pursuant to equitable doctrine of credit for time erroneously spent at liberty.
¶92 For the reasons stated above, I respectfully dissent.

State v. Magnuson, 2000 WI 19, ¶1, 233 Wis. 2d 40, 606 N.W.2d 536.

Wis. Stat. § 946.42(1)(a) 1.h.
The majority appears to conflate the definition of "custody" as provided in subsection h. (i.e., subject to a confinement order under Wis. Stat. § 973.09(4) ) with the definition of "custody" in subsection a. (i.e., actual custody in an institution). See majority op., ¶46 n.12.
Individuals serving jail time as a condition of their probation per Wis. Stat. § 973.09(4) would be entitled to sentence credit for that time even if subsection h. did not exist because that time would qualify as "custody" under subsection a. That is, the jail time would constitute time spent in the "[a]ctual custody of an institution." Wis. Stat. § 946.42(1)(a) 1.a. The majority's contrary reasoning renders subsection h. superfluous.
To the extent the majority relies on Wis. Stat. § 946.42(1)(a)2., that reliance is misplaced. Section 946.42(1)(a)2. specifies that " '[c]ustody' does not include the constructive custody of a probationer ..." (emphasis added). Probationers serving jail time as a condition of their probation are not in constructive custody. They are in the "[a]ctual custody of an institution" per § 946.42(1)(a) 1.a. while serving that conditional jail time. See State v. Zimmerman, 2001 WI App 238, ¶¶13-14, 248 Wis. 2d 370, 635 N.W.2d 864 (providing helpful statutory and legislative history regarding the escape statute's application to probationers).