STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony J. DENTICI, Jr., Defendant-Appellant.

Court of Appeals

*No. 01–1703. Submitted on briefs January 9, 2002.—Decided February 5, 2002.*

2002 WI App 77

(Also reported in 643 N.W.2d 180.)

437

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph E. Redding* of *Glojek Limited,* of West Allis.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael R. Klos*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Anthony J. Dentici, Jr. appeals from that part of an order of the trial court denying his

postconviction motion requesting sentence credit for the period of February 3, 1997, to February 28, 1997, and the whole of the order denying his motion for reconsideration of that same decision. Dentici claims that he is entitled to twenty-five days' credit pursuant to *State v. Riske*, 152 Wis. 2d 260, 448 N.W.2d 260 (Ct. App. 1989), because, after being sentenced to sixty days at the House of Correction as a condition of probation, he was unable to serve his sentence due to overcrowding. Because of the holding in *Riske*, that a person who is absent from jail through no fault of his own is entitled to sentence credit, we are compelled to reverse the order denying Dentici's motion for reconsideration, and remand the cause with directions to credit his sentence for the period of February 3, 1997, to February 28, 1997.[2]

## I. BACKGROUND.

¶ 2. On February 3, 1997, Dentici pled guilty to operating a vehicle without the owner's consent, contrary to WIS. STAT. § 943.23(3) (1997–1998). As a result of this conviction, Dentici was placed on probation. As a condition of his probation, the trial court ordered Dentici to serve sixty days in the House of Correction. On that same day, the trial court ordered the Sheriff to deliver Dentici into the custody of the Department of Corrections. When Dentici arrived at the House of Correction, he was told by the jailer that the jail was overcrowded, and that he should return on February 28, 1997. Dentici returned on February 28, 1997, and was released on May 13, 1997.

¶ 3. Subsequently, on February 5, 1998, Dentici's probation was revoked. The trial court sentenced Den-

---

[2] We also reverse that part of the order denying Dentici's postconviction motion that denied him sentence credit for the period of February 3, 1997 to February 28, 1997.

tici to two years' imprisonment. Dentici filed a series of motions seeking sentence credit. The trial court ultimately awarded Dentici 190 days of sentence credit, but denied his request for an additional twenty-five days' sentence credit for the period of February 3, 1997 to February 28, 1997.

## II. ANALYSIS.

¶ 4. Dentici argues that he must be awarded an additional twenty-five days of sentence credit under WIS. STAT. § 973.155(1)(a) (1999–2000)[3] for the time from February 3, 1997 to February 28, 1997, because he was at liberty from the House of Correction through no fault of his own. As neither party disputes the facts surrounding Dentici's absence from the House of Correction for the period in question, "[t]he application of § 973.155(1)(a), Stats., to undisputed facts presents a question of law this court reviews *de novo.*" *State v. Beiersdorf*, 208 Wis. 2d 492, 496, 561 N.W.2d 749 (Ct. App. 1997); *see also State v. Rohl*, 160 Wis. 2d 325, 329, 466 N.W.2d 208 (Ct. App. 1991) (stating that the question of whether a defendant is entitled to sentence credit pursuant to § 973.155 is a question of law which appellate courts review *de novo*).

¶ 5. In order to receive sentence credit, an offender must establish: (1) that he or she was in "custody," *see State v. Magnuson*, 2000 WI 19, ¶ 25, 233 Wis. 2d 40, 606 N.W.2d 536; and (2) that the custody was in connection with the course of conduct for which the sentence was imposed, *see State v. Demars*, 119 Wis.

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

2d 19, 26, 349 N.W.2d 708 (Ct. App. 1984). Here, the State does not dispute that Dentici's sentence of sixty days in the House of Correction as a condition of his probation was connected to the sentence later imposed for his probation violation. However, the State argues that Dentici is not entitled to sentence credit because he was not in "custody" from the time he was turned away from the House of Correction on February 3, 1997, until he reported back and was ultimately jailed on February 28, 1997. We disagree and conclude that Dentici's leave from the House of Correction corresponds to the type of custody set forth in WIS. STAT. §§ 973.155(1)(a), 973.15(7) and 946.42(1)(a).

¶ 6. WISCONSIN STAT. § 973.155(1)(a) provides, in relevant part:

> A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced.

WISCONSIN STAT. § 973.15(7) states: "If a convicted offender escapes, the time during which he or she is unlawfully at large after escape shall not be computed as service of the sentence." While these statutory sections explain when an offender is entitled to sentence credit, neither explicitly defines "custody."

¶ 7. In *Magnuson*, the supreme court adopted a bright-line test to determine when an offender is in "custody" pursuant to WIS. STAT. § 973.155: "[A]n offender's status constitutes custody whenever the offender is subject to an escape charge for leaving that

441

status." *Magnuson*, 2000 WI 19 at ¶ 25. Therefore, "custody" includes all situations "which the legislature has classified . . . as restrictive and custodial by attaching escape charges for an unauthorized departure from those situations." *Id.* at ¶ 26. This definition includes, but is not limited to, the definition of custody contained in the escape statute, Wis. Stat. § 946.42(1)(a), *see id.*, which states, in relevant part:

> "Custody" includes without limitation actual custody of an institution, including a secured correctional facility . . . and constructive custody of prisoners and juveniles . . . temporarily outside the institution whether for the purpose of work, school, medical care, a leave granted under s. 303.068, a temporary leave or furlough granted to a juvenile or otherwise.

¶ 8. Dentici points to *State v. Riske*, 152 Wis. 2d 260, 448 N.W.2d 260 (Ct. App. 1989), as authority for his position that he was in custody from February 3, 1997 to February 28, 1997. In *Riske*, the defendant surrendered to the county jail on the same day that he was sentenced, but was told by the jailer that the jail could not accommodate him due to overcrowding. *Id.* at 262. The jailer directed Riske to report back twenty-four days later. *Id.* This court held that Riske was entitled to sentence credit for the period from when the jailer refused him admission until he was required to report back to the jail. *Id.* at 261. In reaching that conclusion, this court stated:

> Riske must be given credit against his sentence for the period he was out of the jail at the direction of the sheriff, April 6 through May 1, 1987. This is because Riske was out of the jail through no fault of his. Sentences are continuous, unless interrupted by escape, violation of parole, or some fault of the prisoner,

and "where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, . . . his sentence continues to run while he is at liberty."

. . . .

Section 973.15(7), Stats., by which the time that a convicted offender is at large after escape is not counted as service of the sentence, codifies the broader principle that a person's sentence for a crime will be credited for the time he was at liberty through no fault of the person.

*Id.* at 263–65 (citation omitted) (footnote omitted). Thus, under *Riske*, WIS. STAT. § 973.15(7) establishes that offenders, who report for sentencing but are turned away due to overcrowding, are in custody and will be granted sentence credit for the time they were at liberty through no fault of their own.

¶ 9. Like Riske, Dentici reported to jail on the same day that he was sentenced, was turned away due to overcrowding, and was, therefore, at liberty through no fault of his own. Accordingly, he is entitled to sentence credit for the intervening period before his admission, the twenty-five days from February 3, 1997 to February 28, 1997. *See id*; *see also State v. Gilbert*, 115 Wis. 2d 371, 379–80, 340 N.W.2d 511 (1983) (ruling that a defendant was entitled to sentence credit under WIS. STAT. § 973.155 for time spent in a county jail as a condition of probation); *In re Crow: Habeas Corpus*, 60 Wis. 349, 370, 19 N.W. 713 (1884) (dictum); 14 Op. Att'y Gen. 512 (1925) (stating that a prisoner, who was refused admission to a prison on the day his sentence began because of a flu epidemic, was entitled to sentence credit for the intervening period until his admission).

¶ 10. The State attempts to distinguish the instant case from *Riske* by arguing that, unlike Riske, Dentici's sentence did not necessarily commence on February 3, 1997, because Dentici could have chosen to serve his sentence at a later date. However, this argument is belied by the facts. On February 3, 1997, Dentici was ordered "[t]o be incarcerated in the county HOC for 60 days." Further, on February 3, 1997, the trial court "ORDERED that the Sheriff . . . deliver the defendant into the custody of the Department [of Corrections] located in the City of Milwaukee." Thus, Dentici was sentenced on February 3, 1997 – a sentence that necessarily commenced with the Sheriff's delivery of Dentici to the House of Correction. *See* Wis. Stat. § 973.03 (stating that a jail sentence includes "passing sentence upon a defendant who is to be imprisoned in a county jail"); *see also* Wis. Stat. § 801.02(7)(a)2 (stating that the definition of prisoner includes "any person who is . . . detained by a law enforcement officer").

¶ 11. Dentici's situation is comparable to that of the defendant in *State v. Sevelin*, 204 Wis. 2d 127, 554 N.W.2d 521 (Ct. App. 1996). *But cf. Magnuson*, 2000 WI 19 at ¶¶ 42–43. In *Sevelin*, the trial court granted the defendant, Sevelin, a "furlough" to attend inpatient alcohol treatment as part of his bail modification. *Sevelin*, 204 Wis. 2d at 130. Sevelin argued that the trial court should have credited the time spent at the treatment center against his jail sentence because he was in "custody" at the treatment center. *Id.* at 129. In awarding Sevelin eighty-two days' sentence credit, this court noted that the defendant's release was *undoubtedly temporary* and that *he would be required to return to jail* upon leaving or completing his treatment. *Id.* at 133. Like Sevelin, Dentici was granted leave for a temporary

period of time, twenty-five days, and was required to return on a specified date, February 28, 1997. These two important factors also distinguish Dentici's situation from Magnuson's. *See Magnuson*, 2001 WI 19 at ¶ 43 (noting that Magnuson was not required to return to jail on a specified date).

¶ 12. Moreover, the definition of custody in WIS. STAT. § 973.15(7), as established in *Riske*, comports with the definition of custody contained in the escape statute, WIS. STAT. § 946.42(1)(a). As explained in *Magnuson*:

> Wisconsin Stat. § 946.42(1)(a) requires that a person be in actual or constructive custody under one of the listed situations. Actual custody includes custody of an institution, a secured correctional facility, a secure detention facility, a peace officer, or an institutional guard . . . .
>
> Constructive custody includes temporary leave for the purpose of work, school, medical care, or otherwise.

*Id.* at ¶ 40–41. Dentici's leave from the House of Correction was similar to leave granted under WIS. STAT. § 303.068, which is found in § 946.42(1)(a), in that "the proposed conditions of the leave, including date of departure, duration, and date of return," were specified. WIS. STAT. § 303.068(2). Further, like an inmate granted leave under § 303.068, Dentici was "restricted to the confines of this state." WIS. STAT. § 303.068(4). Therefore, Dentici was in constructive custody, *i.e.*, in that he was "temporarily outside the institution whether for the purpose of work, school, medical care, a leave granted under s. 303.068, a temporary leave or furlough granted to a juvenile *or otherwise*." WIS. STAT. § 946.42(1)(a) (emphasis added). Had Dentici violated any of these conditions by, for example, not

445

returning to the House of Correction on February 28, 1997, he would have been subject to an escape charge. *See id.*

¶ 13. Finally, although *Riske* was decided before *Magnuson*, the *Riske* definition of custody coexists with the *Magnuson* definition.[4] As established in *Magnuson*, the definition of custody is not limited to the definition of custody established in Wis. Stat. § 946.42(1)(a). *Magnuson*, 2000 WI 19 at ¶ 26. Rather, the *Magnuson* court "acknowledge[d] the importance of reading statutes in pari materia . . . and includ[ing] for reference other statutory provisions in which the legislature has classified certain situations as restrictive and custodial by

---

[4] Contrary to the dissent's argument that *State v. Riske*, 152 Wis. 2d 260, 448 N.W.2d 260 (Ct. App. 1989), was inapposite, it applies to the facts here. Therefore, unless *Riske* is overturned by the supreme court, we are required to: (1) follow its mandates, *see Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997); and (2) attempt to synthesize *Magnuson* and *Riske* as we have in the instant case, *see Sweeney v. General Cas. Co. of Wisconsin*, 220 Wis. 2d 183, 192, 582 N.W.2d 735 (Ct. App. 1998) ("The general rule is that holdings not specifically reversed on appeal retain precedential value."). Further, we have not reverted to the detailed factual analysis of *State v. Collett*, 207 Wis. 2d 319, 558 N.W.2d 642 (Ct. App. 1996), but rather have determined that Dentici satisfied the definition of constructive custody as established under Wis. Stat. § 946.42(1)(a) pursuant to *Magnuson*.

Moreover, the dissent's position, like the State's position spurned in *Magnuson*, "fails to acknowledge the 'without limitation' language of Wis. Stat. § 946.42(1)(a), language that precludes the escape statute from being as bright a line as the State maintains. Moreover, the State's rule is stagnant and falls short of recognizing the evolving methods of custody in our criminal justice system." *Magnuson*, 2000 WI 19 at ¶ 23.

attaching escape charges for an unauthorized departure from those situations." *Id.* Thus, we conclude that Dentici is entitled to sentence credit because: (1) the definition of custody is not limited to the definition of custody established in Wɪs. Sᴛᴀᴛ. § 946.42(1)(a); (2) Wɪs. Sᴛᴀᴛ. § 973.15(7) establishes that custody includes the time that offenders are at liberty through no fault of their own due to overcrowding; and (3) Dentici would have been subject to an escape charge for violating any of the conditions of his constructive custody. Accordingly, we reverse the order denying Dentici's motion for reconsideration, reverse in part the order denying Dentici's postconviction motion, and remand the cause with directions to credit his sentence for the period of February 3, 1997, to February 28, 1997.

*By the Court.*—Order reversed; order reversed in part and cause remanded with directions.

¶ 14. FINE, J. (*dissenting*). *State v. Magnuson*, 2000 WI 19, 233 Wis. 2d 40, 606 N.W.2d 536, held that a person placed on in-home detention with electronic monitoring was not in "custody" for sentence-credit purposes because he was not subject to an escape charge if he left the confines of his house. The Majority holds that Anthony J. Dentici, Jr., is entitled to sentence credit for the time during which he was free to roam throughout the state until the date on which he was directed to report to the Milwaukee County House of Correction. Frankly, I fail to see the logic of that, and, accordingly, I respectfully dissent.

¶ 15. *Magnuson* established a bright-line rule to determine when a person is in "custody" for sentence-credit purposes: a person is in "custody" if he or she is "subject to an escape charge for leaving that status." *Id.* at ¶ 31. The Majority does not tell us under what

provision of law, or under what circumstances, Dentici could have been guilty of "escape" before the date he had to report to the House of Correction, and I am aware of none; he was free—"escape from freedom" is not yet a crime.

¶ 16. In my view, *State v. Riske*, 152 Wis. 2d 260, 448 N.W.2d 260 (Ct. App. 1989), upon which the Majority relies, is not on point because there, as the Majority acknowledges, Riske's sentence, by statute, commenced "at noon on the day of sentence." *Id.*, 152 Wis. 2d at 263, 448 N.W.2d at 261. Here, in contrast, Dentici was *not* "sentenced" to incarceration. *Prue v. State*, 63 Wis. 2d 109, 114, 216 N.W.2d 43, 45 (1974) ("probation is not a sentence"). Unlike the situation in *Riske*, Dentici's period of incarceration did not start on the day of "sentencing"; he was placed on probation and did not have to report to the House of Correction until later.[1] Moreover, *Riske* neither discussed nor relied on what *Magnuson* would later lay down as the bright-line rule that governs sentence-credit determinations. Indeed, the State . in *Riske* confessed error on the commencement-of-sentence/sentence-credit issue. *Riske*, 152 Wis. 2d at 263–264, 448 N.W.2d at 261–262. We are, of course, bound by *Magnuson*. I respectfully dissent.

---

[1] It may be that Dentici *was* in "custody" during the time a deputy sheriff took him to the House of Correction, *if, in fact,* that is what happened. Clearly, though, once Dentici was told to go on his way, any "custody" vanished.