State of Wisconsin, Plaintiff-Respondent,

v.

Richard A. Lange, Defendant-Appellant.

Court of Appeals

*No. 01–2584–CR. Submitted on briefs October 25, 2002.— Decided December 18, 2002.*

2003 WI App 2

(Also reported in 656 N.W.2d 480.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel Snyder* of Park Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Kathleen M. Ptacek*, assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. Richard A. Lange appeals from a postconviction order denying his motion to

withdraw his no contest plea to a charge of delivery of a controlled substance, party to the crime, contrary to WIS. STAT. §§ 961.41(1)(cm)1 and 939.05 (1999–2000),[1] and, alternatively, to amend his sentence to give proper credit for time served. Lange raises three issues on appeal: (1) his plea was involuntary because the plea colloquy failed to establish that he understood the elements of the charged offense and the constitutional rights he was waiving; (2) he was deprived of his constitutional right to counsel at the plea hearing; and (3) the trial court failed to provide him with proper sentence credit for time served.

¶ 2. We conclude that Lange has made a prima facie showing that the plea colloquy was inadequate because the trial court failed to ascertain that he understood the elements of the charged offense at the time of the plea hearing. We therefore reverse the judgment and order and remand for further proceedings to determine if the State can demonstrate by clear and convincing evidence that Lange's plea was nevertheless knowingly and voluntarily entered. In the event the State meets its burden at the remand proceedings, the trial court shall reinstate the judgment of conviction.

¶ 3. Lange's contention that he was denied the assistance of counsel at the plea hearing is rendered moot not only by our determination that the plea colloquy failed to comport with the requirements of WIS. STAT. § 971.08(1)(a), but also by the fact that Lange is now represented by appointed counsel for his postconviction proceedings. That appointment will continue on remand.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 4. Because our opinion allows for the possible reinstatement of Lange's conviction, we are required to address his further claim that he was not given the proper credit against his sentence. Because the present record is unclear as to the proper amount of sentence credit to which Lange is entitled pursuant to Wis. Stat. § 973.155(1), we direct the trial court to revisit the computation of Lange's sentence credit in the event the judgment of conviction is reinstated.

## BACKGROUND

¶ 5. On November 18, 1998, the State charged Lange with two counts of party to the crime of delivering cocaine base as a repeat offender and one count of party to the crime of delivery of hydrocodone as a repeat offender. The case was assigned to Fond du Lac County Circuit Judge Henry B. Buslee. The following day, the state public defender's office appointed counsel for Lange pursuant to Wis. Stat. ch. 977.

¶ 6. On April 13, 1999, three months prior to the scheduled jury trial, Lange's counsel moved to withdraw due to a breakdown in communication. Judge Buslee granted the motion, and the state public defender appointed successor counsel for Lange on April 27, 1999. On July 20, 1999, successor counsel also moved to withdraw, again due to a breakdown in communication. Judge Buslee granted this motion on July 21, 1999.

¶ 7. The state public defender declined to appoint further counsel for Lange. Therefore, on October 22, 1999, Lange filed a motion asking Judge Buslee to appoint counsel. Judge Buslee denied this request and Lange proceeded pro se.

¶ 8. At the time this case was pending before Judge Buslee, Lange had other charges pending against

him in a case assigned to Fond du Lac County Circuit Judge Dale English. Lange's attorney in that case was Attorney William Mayer. In due course, Mayer negotiated a plea agreement with the State in both cases.

¶ 9. Pursuant to the plea agreement, Lange would enter a plea of no contest to one count of delivery of a controlled substance (cocaine base), party to a crime, in the case before Judge Buslee in exchange for a dismissal of the repeater allegation and the other two counts. The dismissed counts, however, would be read in for sentencing purposes. With respect to the case assigned to Judge English, Lange would enter a plea of no contest to disorderly conduct and the State would request that the remaining charges be dismissed. Finally, the parties agreed "[t]he sentencing [in the case before Judge English] would be done in front of Judge Buslee, with the consent of Judge English."

¶ 10. Consistent with the plea agreement, Lange appeared pro se[2] in the instant case on May 12, 2000, and entered a plea of no contest to the crime of delivery of a controlled substance, party to a crime, contrary to Wis. Stat. §§ 939.05 and 961.41(1)(cm)1. In due course, and also consistent with the plea agreement, Lange appeared before Judge English and entered a no contest plea to the charge of disorderly conduct in that case.

¶ 11. On October 12, 2000, Lange appeared for sentencing in both cases before Judge Buslee.[3] Attorney Mayer represented Lange at this proceeding. Judge Buslee sentenced Lange to ninety days' time served for

---

[2] Although Mayer had negotiated the plea agreement for Lange, he did not appear for Lange at the plea hearing because he was not appointed to represent Lange in this case.

[3] Although the parties' briefs do not so state, apparently Judge English approved the plea agreement which provided that Judge Buslee would conduct the sentencing in both cases.

the disorderly conduct offense in the case originally assigned to Judge English and seven years' imprisonment for the party to the crime of delivery of a controlled substance in the instant case. Judge Buslee determined that Lange was entitled to 153 days of credit for time served in the instant case. In due course, Judge Buslee entered judgments of convictions in both cases.

¶ 12. Following sentencing, Lange obtained appointed counsel for purposes of postconviction proceedings before Judge Buslee. On April 20, 2001, Lange's counsel filed motions for postconviction relief, but only in the instant case. Lange argued that his plea was not voluntarily and knowingly made and that he was deprived of the assistance of counsel at his plea hearing. Lange additionally argued that Judge Buslee had failed to correctly compute his sentence credit. Following a motion hearing on September 5, 2001, Judge Buslee denied Lange's request for postconviction relief in a written order dated September 10, 2001.

¶ 13. Lange appeals. We will recite additional facts as we address each appellate issue.

## DISCUSSION

### Plea Withdrawal

¶ 14. Lange first contends that the trial court erred in denying his motion for plea withdrawal because the plea colloquy failed to establish that he understood the elements of the offense to which he was pleading and the nature of the constitutional rights he

was waiving. *See* WIS. STAT. § 971.08(1)(a).[4] While there is some suggestion in the record that Lange may have been advised of the elements of the offense and the nature of the rights he was waiving prior to the plea hearing, there is no documentation to that effect and there is no indication of Lange's understanding of the elements of the offense. We therefore agree with Lange that the plea colloquy was inadequate. However, we reject Lange's contention that he was not advised of his constitutional rights.

### Standard of Review

¶ 15. Whether to permit a defendant to withdraw a no contest plea lies within the sound discretion of the trial court. *State v. Giebel*, 198 Wis. 2d 207, 212, 541 N.W.2d 815 (Ct. App. 1995). Postconviction plea withdrawal is permitted only to correct a manifest injustice. *Id.* A plea which is not knowingly, voluntarily and intelligently entered is a manifest injustice. *Id.* The defendant bears the burden of showing the necessity for plea withdrawal by clear and convincing evidence. *See id.*

¶ 16. When a defendant moves to withdraw his or her plea based on the trial court's failure to comply with

---

[4] WISCONSIN STAT. § 971.08(1) provides in relevant part:

(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

the requirements of WIS. STAT. § 971.08 and *State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986), the defendant must (1) make a prima facie showing that the trial court violated § 971.08 and (2) allege that he or she did not know or understand the information that the court should have provided at the plea hearing. *Giebel*, 198 Wis. 2d at 216 (citing *Bangert*, 131 Wis. 2d at 274). Whether a defendant has established a prima facie case for plea withdrawal presents a question of law that we review de novo. *State v. Hansen*, 168 Wis. 2d 749, 755, 485 N.W.2d 74 (Ct. App. 1992).

### *Elements of the Offense*

¶ 17. Due process requires that a plea be knowing, voluntary and intelligent. *State v. Bollig*, 2000 WI 6, ¶ 47, 232 Wis. 2d 561, 605 N.W.2d 199. A plea violates due process unless the defendant has a full understanding of the nature of the charges. *Id.* "A defendant's understanding of the nature of the charge must 'include an awareness of the essential elements of the crime.' " *State v. Brandt*, 226 Wis. 2d 610, 619, 594 N.W.2d 759 (1999) (citation omitted).

¶ 18. WISCONSIN STAT. § 971.08(1)(a) requires that a trial court in accepting a guilty or no contest plea must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." *Bangert* outlines three methods that fulfill this obligation:

> First, the trial court may summarize the elements of the crime charged by reading from the appropriate jury instructions, or from the applicable statute. Second, the trial judge may ask defendant's counsel

whether he explained the nature of the charge to the defendant and request him to summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing. Third, the trial judge may expressly refer to the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea hearing.

*Bangert,* 131 Wis. 2d at 268 (citations omitted). Here, it is undisputed that the trial court did not employ the first or second methods. However, the parties disagree as to whether the trial court's reference to the Plea Questionnaire/Waiver of Rights Form completed by Lange is sufficient to satisfy the requirements of § 971.08(1)(a). We conclude that it is not.

¶ 19. At the plea hearing, the prosecutor represented that he would be submitting to the court the SM-32[5] or the Waiver of Rights Form which had an attachment outlining the State's plea agreement and the jury instructions which included a listing of the three elements of delivering a controlled substance.[6] The trial court specifically confirmed with the prosecutor that the attachments to the Waiver of Rights Form listed "the three elements." There was no further discussion with the prosecutor or Lange regarding the elements of the offense charged.

[5] SM-32 refers to the Criminal Jury Instruction Committee's special material relating to the acceptance of guilty pleas.

[6] The three elements of the offense of delivering a controlled substance (in Lange's case cocaine base) contrary to WIS. STAT. § 961.41(1) are: (1) the defendant delivered a substance; (2) the substance was cocaine base; and (3) the defendant knew or believed that the substance was cocaine base. *See* WIS JI—CRIMINAL 6020.

¶ 20. However, the Waiver of Rights Form did not have the attachment represented by the prosecutor. The "Understandings" section of the Waiver of Rights Form provides, "I understand the crime(s) to which I am pleading has/have elements that the State would have to prove beyond a reasonable doubt if I had a trial. These elements have been explained to me by my attorney or as follows." Lange's signature is in the space provided and a box indicating "See Attached Sheet" is checked. However, there is no "attached sheet" and neither the transcript of the plea hearing nor any other portion of the record reveals any reference to the specific elements of the offense. Thus, the record is barren as to any explanation or detailing to Lange of the elements of the offense. We know only that the trial court and the prosecutor referred to a form that apparently listed the elements of some offense.

¶ 21. Further, while the trial court referenced the Waiver of Rights Form, the court never inquired of Lange whether he had read the form and understood the elements of the charged offense. Such a personal inquiry is required under *Bangert* and WIS. STAT. § 971.08(1)(a). *See Bangert*, 131 Wis. 2d at 266.

¶ 22. Based on the absence of any attachments to the Waiver of Rights Form or any other evidence in the record demonstrating that Lange had knowledge of the elements of the offense charged, coupled with the trial court's failure to ascertain Lange's understanding of these elements during the plea colloquy, we have no choice but to conclude that Lange has made a prima

facie showing that the plea colloquy failed to meet the requirements of WIS. STAT. § 971.08(1)(a) and *Bangert*.[7]

## *Constitutional Rights*

¶ 23. Lange additionally argues that the colloquy failed to advise him of his constitutional rights. We disagree. The record reflects that both the trial court and the Waiver of Rights Form advised Lange of his constitutional rights.

¶ 24. "For a waiver of constitutional rights to be valid, the plea must be based on 'an intentional relinquishment or abandonment of a known right or privilege.'" *Bangert*, 131 Wis. 2d at 265 (citation omitted). A plea may be involuntary because the defendant does not understand the nature of the constitutional rights he or she is waiving. *Id.* at 265–66.

---

[7] The State appears to concede that Lange satisfied the second prong for a prima facie showing—that he alleged he did not know or understand the information that the court should have provided at the plea hearing. *See State v. Giebel*, 198 Wis. 2d 207, 216, 541 N.W.2d 815 (Ct. App. 1995). This is confirmed by Lange's testimony:

Q. At the time that you entered this plea on May 12, 2000, did you understand what the State would have to prove with respect to this party to the crime allegations?

A. No. I know very little to nothing about criminal law and my constitutional rights.

. . . .

Q. Before you and I [postconviction counsel] spoke, after you had already been convicted of this offense, before that time, had anyone ever explained to you what the State would have to prove under the party to the crime statute.

A. No. At no time nobody [sic] did.

¶ 25. The Waiver of Rights Form included in the record sets forth each of the constitutional rights waived by Lange's entry of a no contest plea. Next to each of those rights is a check mark made by Lange indicating that he understood the rights he was waiving.[8] With respect to the waiver of his constitutional rights, the trial court inquired of Lange:

> [I]n addition to those facts on your 32–B Form, or your Waiver of Rights Form, you waive certain constitutional rights that you have, and those have been checked; the right to give up a trial,[9] the right to remain silent, the right to testify and present evidence, and all of those things, and the Court is personally familiar with you having been in court many times prior hereto. You're familiar with those rights and know you're giving them up, is that right?"

Lange replied, "Yes, Judge."

¶ 26. We conclude that the trial court's inquiry as to Lange's understanding of his constitutional rights was sufficient to satisfy the requirements of WIS. STAT.

---

[8] The Plea Questionnaire/Waiver of Rights Form includes a section entitled, "Constitutional Rights." Prior to listing the constitutional rights, it provides: "I understand that by entering this plea, I give up the following constitutional rights." Following the list of constitutional rights, it provides: "I understand the rights that have been checked and give them up of my own free will."

[9] We note that in support of his argument that he was not advised of his constitutional rights, Lange argues that the trial court incorrectly informed him that he had a right to "give up a trial" instead of a right to *have* a trial. Lange does not develop this argument nor does he explain how this minor error affected his understanding of the rights already provided to him in the Waiver of Rights Form. We therefore decline to address it.

§ 971.08(1)(a). *State v. Moederndorfer*, 141 Wis. 2d 823, 826, 416 N.W.2d 627 (Ct. App. 1987), instructs that *Bangert* does not require the trial court to personally address the defendant regarding each of his or her constitutional rights. Rather, the court may refer to a portion of the record or other evidence that affirmatively exhibits the defendant's knowledge of the constitutional rights he or she will be waiving. *Moederndorfer*, 141 Wis. 2d at 827. The trial court did so in this case when it referred to the Waiver of Rights Form completed by Lange and its knowledge of Lange's familiarity with the legal system.

¶ 27. Unlike the procedure regarding the elements of the offense, the trial court referred to the constitutional rights listed in the Waiver of Rights Form and then questioned Lange personally to ascertain whether he understood that he would be waiving those constitutional rights by virtue of his plea. Lange responded that he did. This satisfied *Bangert*. *See Bangert*, 131 Wis. 2d at 270. We therefore reject Lange's contention that the plea colloquy was inadequate on this ground.

*Remand*

¶ 28. Once a defendant has made a prima facie showing that the plea was accepted without the trial court's conforming to the requirements of Wis. Stat. § 971.08 and *Bangert*, the burden then shifts to the State "to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered." *Bangert*, 131 Wis. 2d at 274. The parties disagree as to whether the State has already had an opportunity to make such a showing.

¶ 29. The State argues that if Lange makes a prima facie showing for plea withdrawal, the case should be remanded to allow the State the opportunity to present evidence demonstrating that Lange's plea was knowing, voluntary and intelligent. Lange contends that to do so would give the State a "second kick at the cat." We disagree. At the postconviction hearing, the trial court heard testimony from Lange and arguments from both parties. However, the inquiry was limited to whether Lange had met his threshold burden under *Bangert*. Based on the trial court's finding that Lange had not met his burden, the State was not required—or provided an opportunity— to meet the shifted burden. Therefore, the State has not yet had a "first kick" as to this second level of the inquiry.

¶ 30. We therefore conclude that remand is appropriate to give the State the opportunity to do so.

### The Remand Proceedings

¶ 31. As a final matter on this issue, we address the effect of Lange's plea withdrawal should the State fail to satisfy its shifted burden on remand. As noted above, Lange's plea agreement covered both the instant case and the other case then pending before Judge English. The State argues that if Lange is permitted to withdraw his plea in the instant case, the *entire* plea agreement should be vacated, including the case originally before Judge English. Lange disagrees. He correctly observes that the case originally before Judge English is not before us because he has not appealed from the judgment of conviction in that matter. Nevertheless, we agree with the State.

▉

¶ 32. Wisconsin case law clearly holds that a
defendant's repudiation of a portion of the plea agree-
ment constitutes a repudiation of the entire plea agree-
ment. *See State v. Pohlhammer,* 78 Wis. 2d 516, 524,
254 N.W.2d 478 (1977), *on rehearing,* 82 Wis. 2d 1, 260
N.W.2d 678 (1978); *State v. Briggs,* 218 Wis. 2d 61, 73,
579 N.W.2d 783 (Ct. App. 1998); *State v. Robinson,* 2002
WI 9, ¶ 47, 249 Wis. 2d 553, 574, 638 N.W.2d 564.
Ordinarily, the remedy for such repudiation requires
reinstatement of the original charges against the ac-
cused.[10] *Robinson,* 2002 WI 9 at ¶ 48. However, no
Wisconsin case has addressed that remedy when, as
here, the repudiated plea agreement is encompassed by
multiple judgments, some of which are not embraced by
the appellant's notice of appeal. Thus, the question is
whether we may extend *Pohlhammer, Briggs* and *Rob-
inson* to this different factual setting.

¶ 33. We find the rationale of *Briggs* particularly
helpful and persuasive. There a plea agreement re-
sulted in a judgment of conviction for party to the
crimes of attempted felony murder and armed burglary.
*Briggs,* 218 Wis. 2d at 64. On appeal, Briggs challenged
only the conviction for attempted felony murder, argu-
ing that such a crime was unknown to the law. *Id.* at
64–65. The court of appeals agreed, and the court then
turned to the scope of the remedy. *Id.* at 65–68. Briggs
argued that the court should vacate the conviction for
the phantom crime and leave the balance of the judg-
ment intact. *Id.* at 69.

---

[10] However, when considering the appropriate remedy, the
trial court must examine all of the circumstances of the case,
considering both the defendant's and State's interests. *State v.
Robinson,* 2002 WI 9, ¶ 48, 249 Wis. 2d 553, 638 N.W.2d 564.

¶ 34. The court of appeals rejected this argument. After reviewing the statutes governing a criminal appeal, the court concluded, "Section 809.30 does not describe appeals from portions of judgments or orders, nor does it indicate that the defendant may limit the scope of our review of a judgment or order from which appeal is taken." *Id.* at 70. The court also said, "Further, to construe § 809.30, STATS., in a manner that would restrict our jurisdiction to only a portion of the judgment, would undercut the finality of the appellate procedure." *Id.* at 71.

¶ 35. The court of appeals also observed that the judgment was the product of a plea bargain "where the resulting convictions were both part of the same agreement." *Id.* Noting that "a conviction of one crime was not sufficient to satisfy the interests of the State, causing the convictions within the judgment to be interconnected," the court concluded:

> [W]hen a criminal appeal is taken from a conviction resulting from a plea bargain, it brings before us all of the judgment or order appealed from, even when the appellant attempts to limit our review to only a portion of the judgment or order by the way in which the notice of appeal is stated.

*Id.*

¶ 36. We see no reason why the same logic should not apply to the instant case where the convictions covered by a plea agreement are recited in multiple judgments of convictions as opposed to a single judgment of conviction. All of the convictions stemmed from a singular, global plea agreement and thus were "interconnected" within the meaning of *Briggs*. The multiple convictions could have been entered in a single judgment of conviction, which would clearly allow us to

apply *Briggs*. Commonsense dictates that jurisdictional bars should rest on substantive and meaningful principles, not on the ministerial and artificial choice as to how the judgments of conviction were clerically entered.

¶ 37. Therefore, if the State fails to satisfy its shifted burden under *Bangert* at the remand proceedings, the trial court is authorized to vacate both judgments of conviction and to reinstate the original charges alleged against Lange in both cases.

### *Assistance of Counsel*

¶ 38. Lange additionally contends that the trial court improperly deprived him of his constitutional right to counsel at the plea hearing. We conclude that this issue is rendered moot not only by our determination that the plea colloquy was inadequate but also by the subsequent appointment of postconviction counsel. That appointment will continue on remand until such time as the court terminates it. *See* Wis. Stat. Rule 809.85 ("[a]n attorney appointed by a lower court in a case or proceeding appealed to the court shall continue to act in the same capacity in the court until the court relieves the attorney"); *see also Roberta Jo W. v. Leroy W.*, 218 Wis. 2d 225, 240, 578 N.W.2d 185 (1998).

### *Sentence Credit*

¶ 39. Our opinion carries the prospect that Lange's conviction will be reinstated. Therefore, we must address Lange's challenge to the trial court's calculation of sentence credit for time served.

793

¶ 40. WISCONSIN STAT. § 973.155, which governs sentence credit, provides in relevant part that "[a] convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." Sec. 973.155(1)(a). This includes "custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole hold under s. 304.06(3) or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction."[11] Sec. 973.155(1)(b).

¶ 41. Whether a defendant is entitled to sentence credit pursuant to WIS. STAT. § 973.155 is a question of law which we review de novo. *State v. Rohl*, 160 Wis. 2d 325, 329, 466 N.W.2d 208 (Ct. App. 1991). In order to

---

[11] WISCONSIN STAT. § 973.155(1) provides in its entirety:

(1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;

2. While the offender is being tried; and

3. While the offender is awaiting imposition of sentence after trial.

(b) The categories in par. (a) include custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole hold under s. 304.06(3) or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction.

receive sentence credit, an offender must establish: (1) that he or she was in "custody"; and (2) that the custody was in connection with the course of conduct for which the sentence was imposed. *State v. Dentici*, 2002 WI App 77, ¶ 5, 251 Wis. 2d 436, 643 N.W.2d 180.

¶ 42. The parties do not dispute that Lange was "in custody" during the period for which he is seeking credit. *See id.* Lange was arrested for the charges in this case on November 18, 1998, and he remained in custody thereafter to the date of his sentencing. At his initial appearance, Lange's counsel indicated that Lange was already also in custody on a hold in another matter. Lange's parole on that matter was revoked on November 29, 1999. Lange completed his sentence on that matter on January 8, 2000.

¶ 43. At issue is whether Lange was in custody "in connection with the course of conduct for which the sentence was imposed." *See id.* Lange argues that he was in custody in connection with this case for a period of 654 days as opposed to the 153 days credited him by the trial court.[12] Lange reasons that he is entitled to credit for the period from his arrest in this matter on November 18, 1998, until sentencing on October 12, 2000, "less the time between revocation of his parole and the completion of his sentence after revocation." Thus, consistent with the holding in *State v. Boettcher*, 144 Wis. 2d 86, 87, 423 N.W.2d 533 (1988), Lange concedes he is not entitled to duplicative credit for the time he served on his parole revocation.

[12] Lange initially argues that he is entitled to 694 days of sentence credit. However, he later reduces that claim to 654 days.

¶ 44. That leaves us with the remaining period of Lange's incarceration. The court accepted the State's representation at sentencing that Lange was entitled to only 153 days of sentence credit. At that time, Lange registered an objection with the trial court but was not provided an opportunity to explain his position.[13] There is no documentation or other evidence in the record as to how the State arrived at its calculation. Nor did the court provide any reasoning on the record for accepting the State's calculations over Lange's objection.

¶ 45. The State contends that Lange has failed to carry his burden of showing that he is entitled to additional sentence credit for time served. *See State v. Villalobos*, 196 Wis. 2d 141, 148, 537 N.W.2d 139 (Ct. App. 1995). However, even accepting the State's argument that Lange is not entitled to sentence credit for the time preceding his parole revocation (November 18, 1998 until November 24, 1999), we are left without proper explanation from either party or the trial court as to the period between his completion of his sentence on the other matter on January 8, 2000, and his sentencing in this case on October 12, 2000. Given the

---

[13] At the sentencing hearing, the State indicated to the court that Lange was "entitled to 153 days credit on 98–CF-370." Lange replied, "I was arrested on November 18, 1998, for 98–CF-370 . . . . I would ask the Court to credit me towards that seven year sentence . . . since the time of November 18 . . . ." The court interrupted Lange, stating, "You'll get the time credit that is indicated by the District Attorney, Mr. Lange."

If, in fact, Lange completed his sentence on the parole revocation matter on January 8, 2000, and if, in fact, his custody thereafter was related only to the current matter, it would appear that Lange was entitled to more than the 153 days allowed by the trial court since the sentencing in the current matter occurred on October 12, 2000.

history of this case and the significant liberty interests involved, we decline to visit this failure, which dates back to the sentencing hearing, solely on Lange. *See State ex rel. Cramer v. Schwarz*, 2000 WI 86, ¶ 29, 236 Wis. 2d 473, 487, 613 N.W. 2d 591 ("An appeal or writ seeking relief from a judgment of conviction or sentence implicates the core liberty interest of the defendant.").

¶ 46. Without the benefit of documentation as to the State's calculations or the trial court's reasoning, we lack sufficient evidence to make a determination as to the proper sentence credit due Lange. Therefore, in the event that Lange's plea is ultimately deemed valid, it will be necessary on remand for the trial court to hold a hearing to determine Lange's sentence credit prior to reinstating the judgment of conviction.

### *CONCLUSION*

¶ 47. We conclude that Lange has made a prima facie showing for plea withdrawal. We therefore reverse the judgment of conviction and order denying postconviction relief. We remand for further proceedings to determine if the State can satisfy its shifted burden under *Bangert* to show that Lange's plea was knowingly and voluntarily entered. If the State fails in meeting that burden, the trial court is authorized to vacate both judgments of conviction and to reinstate the original charges against Lange.[14] If the State satisfies its shifted

---

[14] We stress that we "authorize," but do not "direct," the trial court to vacate the other judgment of conviction if the court should ultimately determine that Lange's plea should be withdrawn. We do so because, as noted earlier at footnote 10, the trial court should consider the special circumstances of each case when considering the scope of the remedy. *Robinson*, 2002 WI 9 at ¶ 48. We see nothing in the appellate briefs which

burden, the trial court is authorized to reinstate the judgment of conviction challenged on this appeal. In that event, however, the trial court is directed to revisit the issue of sentence credit due Lange.

*By the Court.*—Judgment and order reversed and cause remanded.

suggests that the judgment of conviction in the other case should not also be vacated if Lange ultimately prevails in his plea withdrawal request. But we leave the ultimate determination on this question to the trial court on remand.