State of Wisconsin, Plaintiff-Respondent,
v.
Derrick C. Montriel, Defendant-Appellant.
No. 04-0327-CR.
Court of Appeals of Wisconsin.
Opinion Filed: November 2, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1 PER CURIAM.
Derrick C. Montriel appeals from a judgment entered after he pled guilty to conspiracy to commit arson to a building. See WIS. STAT. §§ 943.02(1)(a), 939.31 (200102).[1] He also appeals from an order denying his postconviction motion to withdraw his plea or, in the alternative, for resentencing. Montriel contends that: (1) there was no factual basis to support his plea; (2) the trial court erroneously exercised its sentencing discretion; (3) he was sentenced based on inaccurate information; and (4) he was entitled to sentence credit for time he spent in custody on allegedly related federal charges. We affirm.

I.
¶2 Derrick C. Montriel was charged with conspiracy to commit arson for participating in a plan to burn down a building on West Fond du Lac Avenue in the City of Milwaukee. According to the complaint, Montriel and several other men, including Joel Rhodes and Charles Bishop, were running what they called an "after hours" club from the building. In April of 1999, the City deemed the building uninhabitable due to code violations and posted a "no occupancy" sign on the building.
¶3 In January of 2001, the police learned that the men were planning an "after-hours" party and, on February 3, 2001, at approximately 3:30 a.m., they entered the building pursuant to a search warrant. According to the complaint, they found forty-nine people, open beer cans, a .45 caliber pistol, a machine pistol, marijuana, and cocaine base. The police left the building around 6:20 a.m. Around 10:50 a.m., someone called the City of Milwaukee Fire Department and told it that the building on Fond du Lac Avenue was burning. According to the complaint, the building was severely damaged by the fire.
¶4 Tavares White and Charles Bishop were arrested in connection with the fire. Both men implicated Montriel. Montriel was arrested on March 27, 2002, and charged in federal court with conspiracy to distribute drugs and possession of a firearm in furtherance of a drug trafficking crime. The state complaint charging Montriel with conspiracy to commit arson to a building was issued in November of 2002. He was transferred to a state prison in early December of 2002.
¶5 The state case was plea-bargained and Montriel pled guilty to the arson charge. At the plea hearing, the assistant district attorney told the court that, in exchange for Montriel's guilty plea, the State would ask the United States Attorney's Office to dismiss the then-pending federal charges against Montriel, and would recommend on the state charge a sentence of twelve years in prison, with eight years of initial confinement and four years of extended supervision.[2] After establishing that Montriel understood the terms of the plea bargain, the trial court asked Montriel questions about his plea. In response to these questions, Montriel said that he understood the elements of conspiracy to commit arson and that he was pleading guilty because he was guilty.
¶6 The trial court then asked Montriel if the facts in the complaint were "true and correct." Before Montriel could answer, his lawyer "interject[ed]" and summarized the facts. Montriel's lawyer told the court that Rhodes was "upset" because the police had "raid[ed]" the club. According to the lawyer, Rhodes "contacted" Montriel and several others after learning that the person who owned the building had "tipped off" the police. The lawyer told the court that Montriel admitted that he went to the club, took out electronic equipment that he owned, and "participat[ed] in what he [Montriel] believed to be the destruction of the building."
¶7 After his lawyer spoke to the trial court, Montriel told it that he had talked to Rhodes on the night of the fire and Rhodes had told him that, "he [Rhodes] was going to burn the place up." Montriel admitted that he went to the building and took out his equipment because he knew that the building was going to be burned down. Montriel told the court that, when he was at the building, he heard "talk" about setting a fire and saw a gas can. He claimed that he did not pour any gasoline or start the fire, but admitted that he knew about the fire and "concealed" it. The assistant district attorney then summarized the facts:
Montriel ... got a call sometime in the morning of February 3, 2001 from Joel Rhodes who indicated he was upset about what happened at the after hours. He indicated that he wanted the place burned down, told you, or you agreed to meet him at the after hours. You could get your property out of there before it got burned down. You went there. Joel Rhodes and the other individuals you mentioned came there. They went in there with you. At some point you saw a gas can that had not been there before, and then the place was burned down that morning.
Montriel agreed with the assistant district attorney's summary of the facts, and the trial court found that there was an adequate factual basis for the plea. The trial court then determined that Montriel's plea was "freely, voluntarily and intelligently entered," and found him guilty of conspiracy to commit arson to a building.
¶8 At sentencing, the trial court heard the parties' corrections to the presentence-investigation report and considered their sentencing recommendations. Pursuant to the plea bargain, the State recommended twelve years in prison, with eight years of initial confinement and four years of extended supervision. It also recommended 173 days of sentence credit because Montriel began his custody on the state charges on December 3, 2002.
¶9 Montriel's lawyer asked the sentencing court to place Montriel on probation, or, in the alternative, to "consider" the presentence-investigation-report writer's recommendation of eight years in prison, with three years of initial confinement and five years of extended supervision. The lawyer also requested 428 days of sentence credit, beginning with March 27, 2002, the date Montriel was taken into federal custody. The trial court ultimately sentenced Montriel to ten years in prison with five years of initial confinement and five years of extended supervision, and granted him 173 days of sentence credit.

II.

A. Factual Basis
¶10 Montriel claims that there was no factual basis to support his plea. After sentencing, a defendant is entitled to withdraw a plea if he or she establishes by clear and convincing evidence that failure to allow withdrawal would result in a manifest injustice. State v. Black, 2001 WI 31, ¶9, 242 Wis. 2d 126, 624 N.W.2d 363. A manifest injustice occurs when the trial court fails to establish that there is a factual basis for the guilty plea. State v. Thomas, 2000 WI 13, ¶17, 232 Wis. 2d 714, 605 N.W.2d 836.
¶11 To establish a factual basis, the trial court must make such inquiry as satisfies it that the defendant in fact committed the crime to which he or she is pleading guilty. Id., ¶14; WIS. STAT. § 971.08(1)(b). The trial court may conduct this inquiry "as [it] sees fit, as long as [it] guarantees that the defendant is aware of the elements of the crime, and the defendant's conduct meets those elements." Thomas, 232 Wis. 2d 714, ¶22. If the guilty plea is the result of a plea bargain, "the court need not go to the same length to determine whether the facts would sustain the charge as it would where there is no negotiated plea." Broadie v. State, 68 Wis. 2d 420, 423424, 228 N.W.2d 687, 689 (1975).
¶12 Montriel claims that there was no factual basis for his plea because, as he expressed it in his motion for postconviction relief, "the record [was] void of any facts establishing [that he] committed a conspiracy." The elements of conspiracy are: "(1) an agreement between the defendant and at least one other person to commit a crime; (2) intent on the part of the conspirators to commit the crime; and (3) an act performed by one of the conspirators in furtherance of the conspiracy." State v. West, 214 Wis. 2d 468, 476, 571 N.W.2d 196, 199 (Ct. App. 1997).
A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. If the conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.
Salinas v. United States, 522 U.S. 52, 6364 (1997) (citations omitted); see also State v. Seibert, 141 Wis. 2d 753, 762, 416 N.W.2d 900, 904 (Ct. App. 1987) (conspiratorial agreement need not be express; a tacit understanding of a shared goal is sufficient).
¶13 Montriel argues that the factual basis was inadequate because there was no evidence that he agreed to commit arson, had the intent to burn the building, or was "aware that there was an intent or plan to burn the building." The trial court reviewed the record, including the plea-hearing transcript, and determined that there was a sufficient factual basis. We agree.
¶14 As we have seen, the trial court had an extensive colloquy with Montriel and his lawyer at the plea hearing about the factual basis for the crime. During the hearing, Montriel admitted that: (1) Rhodes told him that he wanted to burn down the building; (2) Montriel then went to the building; (3) at the building, he heard the other men talk about a fire and saw them prepare to start a fire; and (4) he removed his electronic equipment from the building to save it from a fire. These facts are sufficient to provide a factual basis for Montriel's guilty plea to a conspiracy to burn down the "after hours" club because he not only demonstrated a unity of purpose with the others, but also because his presence and actions provided the glue of moral support. See People v. Zamora, 18 Cal. 3d 538, 555 (1976) (moral support of the group is seen as strengthening the perseverance of each member of the conspiracy). The evidence was sufficient to support the trial court's finding that there was an adequate factual basis for Montriel's plea.[3]

B. Sentencing
¶15 Montriel also claims that the trial court erroneously exercised its sentencing discretion and points to the heightened focus of State v. Gallion, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, which requires that trial courts "by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives." Id., 270 Wis. 2d 535, ¶46.[4] He argues that the trial court did not adequately consider what he alleges are positive sentencing factors, including that Montriel: (1) cooperated with the police; (2) was employed full time; and (3) was active in his son's life. We disagree.
¶16 Sentencing is committed to the discretion of the trial court and our review is limited to determining whether the trial court erroneously exercised its discretion. McCleary v. State, 49 Wis. 2d 263, 278, 182 N.W.2d 512, 520 (1971). A strong public policy exists against interfering with the trial court's discretion in determining sentences and the trial court is presumed to have acted reasonably. State v. Wickstrom, 118 Wis. 2d 339, 354, 348 N.W.2d 183, 191 (Ct. App. 1984). To obtain relief on appeal, the defendant has the burden to "show some unreasonable or unjustified basis in the record for the sentence imposed." State v. Borrell, 167 Wis. 2d 749, 782, 482 N.W.2d 883, 895 (1992).
¶17 The three primary factors a sentencing court must consider are the gravity of the offense, the character of the defendant, and the need to protect the public. State v. Harris, 119 Wis. 2d 612, 623, 350 N.W.2d 633, 639 (1984). The court may also consider the following factors:
"(1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention."
Id., 119 Wis. 2d at 623624, 350 N.W.2d at 639 (quoted source omitted); see also Gallion, 270 Wis. 2d 535, ¶¶5962 (applying the main McCleary factorsthe seriousness of the crime, the defendant's character, and the need to protect the publicto Gallion's sentencing). The weight to be given to each of these factors is within the trial court's discretion. Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457, 461 (1975); see also Gallion, 270 Wis. 2d 535, ¶62.
¶18 In this case, at the beginning of its sentencing remarks, the trial court acknowledged that it was required to consider the gravity of the offense, Montriel's character, and the need to protect the community. It indicated that it had reviewed the presentence-investigation report, letters submitted on behalf of Montriel, Montriel's then-pending federal charges, a pay stub indicating the hours Montriel had worked, and photographs of the crime scene. It then considered the gravity of the offense, noting that Montriel had committed a "serious offense." It commented that the photographs of the crime scene showed substantial property damage, and that the fire had put in danger the lives of community members and firefighters.
¶19 The trial court also addressed Montriel's character. It noted that Montriel had absconded when he had been on probation in the past, and stated that his past performance "really puts a doubt in my mind with respect to how you will perform on any future probation." It also noted that:
since being released the only offense you've picked up essentially is the obstructing and resisting in which you received a fine and there was the operating after revocation. For the most part, you have been pro-social, but there is that side of your character and nature that your involvement in this sort of enterprise in which to obtain quick and easy money which gives this court great concern.
It commented that the "positive Mr. Montriel, the one that's involved in your son's life, involved with children, involved in trying to accept your responsibilities is the person that is really being short-changed in all of this."
¶20 Finally, the trial court also addressed the need to protect the public when it concluded that, "confinement is necessary not only to address the treatment needs that you have but also to protect the public from further criminal activity." It explained that it understood how the "presentence writer came to the conclusion that you present a low [to] moderate risk to re-offend ... given the many positive things that you've managed to do in your life, but at the same time this court must weigh the serious nature of this offense against that."
¶21 Montriel also contends that the trial court erroneously exercised its discretion because it "departed from the [presentence-investigation report's] recommendation with no adequate explanation." Trial courts, however, are not required to blindly accept or adopt sentencing recommendations from any source. State v. Johnson, 158 Wis. 2d 458, 465, 463 N.W.2d 352, 355 (Ct. App. 1990). Rather, a trial court must independently determine that a particular sentence is appropriate in light of the goals of sentencing as applied to the facts of the case. Id. 
¶22 Montriel also claims that his sentence was based on inaccurate information. Defendants have a due-process right to be sentenced on the basis of accurate information. Id., 158 Wis. 2d at 468, 463 N.W.2d at 357. To establish as due-process violation, a defendant must show by clear and convincing evidence that: (1) the information was inaccurate; and (2) the trial court actually relied on the inaccurate information in sentencing. State v. Littrup, 164 Wis. 2d 120, 132, 473 N.W.2d 164, 168 (Ct. App. 1991).
¶23 At the sentencing hearing, the trial court asked whether Montriel and his lawyer had reviewed the presentence-investigation report. Montriel's lawyer indicated that they had and that a few changes needed to be made. Montriel's lawyer told the court that, contrary to what appeared in the report, Montriel "never was the lessee or had any sort of land contract interest or actual possessory interest in this after hours club," and that Montriel was not at the club when the police "raided" it.
¶24 The State responded that the presentence-investigation report was derived from police reports that indicated that Joel Rhodes rented the building from Montriel, and that the City of Milwaukee had notified Montriel of building code violations. The trial court then expressed its concern that:
Reasonable minds can differ as to how you interpret the facts, and obviously, ... you'll [to Montriel's lawyer] be free to argue whatever ... facts you feel that are beneficial to Mr. Montriel and necessary or at least helpful to this court in making its determination, but if we're at a point where the factual dispute is so great that somehow the [presentence-investigation report] is inaccurate, then I have to ask the next question, but if it's just a matter of interpretation of the facts and essentially there is evidence  or at least there's a basis in which these conclusions are drawn, you know, then it's just a matter of trying to  what position you want to argue to the court.
Montriel's lawyer assured the trial court that, "we are prepared to proceed today to sentencing and I think that the Court highlighted just a moment ago which Mr. Montriel and I both listened to is accurate." The lawyer clarified that his "intent was just to at least balance the facts with the argument I intend to make, but the Court hasn't heard my argument yet, so I guess I put the cart in front of the horse."
¶25 Absent anything more substantial than what Montriel has presented, the trial court did not err in resolving the "ownership" dispute the way it did because Montriel and his lawyer were given an opportunity to present their version of the facts at the sentencing hearing, and the trial court is vested with the discretion to assess facts relevant to its sentencing decision. See State v. Spears, 227 Wis. 2d 495, 508509, 596 N.W.2d 375, 380381 (1999).
¶26 Montriel also claims that the State, during its sentencing argument, "introduced facts at the hearing that made him sound like he was planning a robbery based on gloves and a ski mask found in his house when police were searching his roommate's belongings." At the sentencing hearing, the State told the trial court that federal agents had searched Montriel's apartment in response to a "possible robbery in the offing," and found a ski mask, jumpsuit, Glock pistol, and walkie-talkies. Montriel claims that this was a "distorted [and] unjust" characterization of the evidence because Montriel's job in the freezer department of U.S. Foods required him to wear gloves and a ski mask. Montriel has not pointed to any evidence to show that that the trial court relied on this allegedly inaccurate information in sentencing him. The trial court never referred to a robbery during the sentencing hearing and, as we have seen, based its sentence on appropriate factors.
¶27 Finally, Montriel argues that the trial court did not have a basis for finding at the sentencing hearing that Montriel was involved in illegal activity for fast money and greed. We disagree. It was reasonable for the trial court to infer that Montriel was involved in an illegal "enterprise ... to obtain quick and easy money" based on facts that Montriel worked at an illegal "after hours" club and that he was charged in federal court with conspiracy to distribute drugs. The trial court properly denied Montriel's due process claim. The trial court considered the appropriate factors in imposing Montriel's sentence and did not erroneously exercise its discretion.

C. Sentence Credit
¶28 Finally, Montriel alleges that the trial court erred when it denied his postconviction motion claiming that he was entitled to sentence credit under WIS. STAT. § 973.155 for the time he spent in custody on the federal charges.[5] Whether a defendant is entitled to sentence credit pursuant to § 973.155 is a question of law that we review de novo. State v. Tuescher, 226 Wis. 2d 465, 468, 595 N.W.2d 443, 445 (Ct. App. 1999). To receive sentence credit, an offender must show that: (1) he or she was in custody; and (2) the custody was in connection with the course of conduct for which the sentence was imposed. State v. Dentici, 2002 WI App 77, ¶5, 251 Wis. 2d 436, 643 N.W.2d 180.
¶29 The parties do not dispute that Montriel was in custody during the period for which he is seeking credit. Thus, the issue is whether Montriel was in custody in connection with the "course of conduct" for which the sentence was imposed. In order to receive credit under WIS. STAT. § 973.155, the crime for which the defendant was in custody and the crime for which the defendant was sentenced must arise out of the "same specific act[]." Tuescher, 226 Wis. 2d at 476479, 595 N.W.2d at 448449. Although the federal drug/gun charges apparently arose out of the arson investigation, Montriel was in federal custody for crimes other than the arson charge to which he ultimately pled guilty and was sentenced. Thus, Montriel was not entitled to sentence credit for the time he spent in federal custody.
By the Court.  Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 200102 version unless otherwise noted.
[2] The federal drug/firearm charges were ultimately dismissed.
[3] In his reply brief, Montriel contends for the first time on appeal that his plea was not knowing and voluntary because there is no proof that he understood the elements of conspiracy. We decline to review this argument because Montriel raised it for the first time in his reply brief. See Sisters of St. Mary v. AAER Sprayed Insulation, 151 Wis. 2d 708, 723-724 n.4, 445 N.W.2d 723, 729 n.4 (Ct. App. 1989) (generally, appellate court will not review an issue raised for the first time in the reply brief).
[4] In its brief on appeal, the State argues that State v. Gallion, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, does not apply to this case because it was decided after Montriel was sentenced. We agree. Gallion in haec verba applies only to "future cases." See id., ¶¶8, 76 ("In sum, we reaffirm the standards of McCleary [v. State, 49 Wis. 2d 263, 182 N.W.2d 512 (1971),] and require the application to be stated on the record for future cases.") (emphasis added). Nevertheless, Montriel's sentencing passes muster under Gallion's gloss on McCleary and its progeny as well. See State v. Stenzel, 2004 WI App 181, ¶9, No. 03-2974 ("While Gallion revitalizes sentencing jurisprudence, it does not make any momentous changes.").
[5] WISCONSIN STAT. § 973.155 provides, as relevant:

A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
1. While the offender is awaiting trial;
2. While the offender is being tried; and
3. While the offender is awaiting imposition of sentence after trial.